## THE WATSON CUT STONE COMPANY

*v.*

## WILLIAM SMALL.

*Opinion filed October 19, 1899.*

1. APPEALS AND ERRORS—*when insufficiency of evidence cannot be urged as ground for reversal.* That the evidence is not sufficient to sustain the judgment under several of the counts on which the case was submitted to the jury cannot be urged as a ground for reversal, where the appellant's given instructions submitted to the jury the issues raised by such counts.

2. MASTER AND SERVANT—*when question of assumed risk by servant is for the jury.* The questions of assumed risk and contributory negligence on the part of a workman injured by the fall of a corbel stone which he was employed to repair are for the jury, where the evidence is conflicting as to the condition of the stone and what caused it to fall.

3. SAME—*when servant is not chargeable with negligence as a matter of law.* A workman injured by the falling of a corbel stone which he was repairing is not chargeable with negligence, as matter of law, when he was not in a position to see the danger and continued work in reliance upon representations of the foreman as to the condition of the stone.

*Watson Cut Stone Co.* v. *Small,* 80 Ill. App. 328, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

AMERICUS B. MELVILLE, and F. J. CANTY, for appellant.

WILLIAM C. SNOW, (DARROW, THOMAS & THOMPSON, and D. J. DOWNEY, of counsel,) for appellee.

Per CURIAM: After a careful examination of the record and the argument of counsel in this case we perceive no substantial ground for disturbing the judgment of the Appellate Court. It will therefore be affirmed.

As the questions involved are fully and satisfactorily discussed in the opinion of the Appellate Court, that opinion will be adopted as the opinion of this court. The opinion, and the statement preceding it, are as follows:

"Appellee, an experienced stone-cutter, was injured January 26, 1896, by the falling upon him of part of a defective or broken corbel stone, which extended under the projection of a series of bay windows commencing at the top of the first story of a six-story building at Ellis avenue and Thirty-fifth street, Chicago, while he was engaged in the employ of appellant in cutting out a piece from the stone to put in another piece, and thus repair it. The building was a new one, completed in the fall of 1895, and appellant had the contract for furnishing and setting the cut stone work, including this corbel stone. It employed as sub-contractors the firm of Howarth & Macbeth to set the cut stone, and this firm actually did the work of setting this corbel stone, under the superintendence of appellant. Appellee had nothing to do with the original construction of the building, but was called in by appellant in January, 1896, to repair this corbel stone, it having begun at that time to crack in one or more places, and one piece of it had fallen out before he began the work of repair.

"Appellee's original declaration consists of five counts, the first, third and fifth of which were dismissed by the appellee, and the second and fourth are based upon negligence of appellant in not properly supporting and fastening the corbel stone. Three additional counts were filed November 7, 1897, all of which allege negligence in the original construction or material used therein. Three other additional counts were filed on December 7, 1897, the first of which is based upon the failure of appellant, knowing the danger to which appellee was exposed at his work, to notify him of such danger, and alleging that appellee did not know of the danger. The second and third of these additional counts charged, in different

ways, negligence in the original construction of the build-ing. Appellant pleaded the general issue. A trial was had November 16, 1897, during the course of which ap-pellee dismissed the first, third and fifth counts of the original declaration, which resulted in a verdict on the remaining counts of that declaration and the counts of November 7, 1897, in favor of appellee, of $1000, which was set aside by the court and a new trial awarded. A second trial was had on these counts and the additional counts filed December 7, 1897, which resulted in a verdict and judgment for appellee of $1500, from which this ap-peal is taken.

"At the close of plaintiff's evidence defendant asked an instruction to find it not guilty, which was refused. Defendant then asked seven separate instructions direct-ing the jury to find it not guilty as to each of the several counts then before the jury, except the third count of December 7, 1897, each of which was refused. Each of these same instructions was asked at the close of all the evidence, and refused by the court in the same order as at the close of plaintiff's evidence.

"Among other instructions not in question, at the in-stance of appellee the court gave the following, viz.:

"18. 'The court instructs the jury that the law is that where a contractor sub-lets a part of the work which he is to perform, to another, and the sub-contractor, in the execution of the work so let to him, is superintended and controlled by the contractor, and the work is performed negligently by the sub-contractor, then the negligence of the sub-contractor is also the negligence of the origi-nal contractor, providing the part of the work performed negligently is performed under the supervision and direc-tion of the original contractor.'

"But refused to give as requested by appellant the following, to-wit:

"32. 'If you believe, from the evidence, that the acci-dent in question happened through the negligence of in-

dependent contractors who sub-let from the defendant, the Watson Cut Stone Company, the setting of the stones in question, and that the said contractors were reasonably competent and skillful for the performance of said work, then your verdict will be not guilty.'

"WINDES, P. J.: Appellant contends that appellee assumed the risk of the danger to which he was exposed, and if he did not he was guilty of contributory negligence; that the court erred in refusing the several instructions noted in the statement, and in giving appellee's eighteenth instruction.

"We are inclined to the view that the evidence is not sufficient to sustain the judgment under either of the several counts on which the case was submitted to the jury, except the first additional count filed December 7, 1897, which is based upon the failure of appellant to notify appellee of the danger to which he was exposed while engaged in his work for appellant. But however that may be, we are of opinion this cannot now be urged as a cause for reversal, because appellant asked the thirty-second instruction upon the theory it was not liable for any negligence charged, and the court gave at its instance several instructions in which is submitted to the jury the question of any and all negligence charged against it.   *Jeffery* v. *Robbins*, 73 Ill. App. 353; *Egbers* v. *Egbers*, 177 Ill. 82.

"This fact, we think, also eliminates from the case any question of independent contractor, which is made by appellant. But even if this were not so, the clear preponderance of the evidence is against appellant on this point.   A verdict for appellant based on the theory of independent contractor could not be sustained by the evidence.   The evidence shows that appellee is an experienced stone-cutter and familiar with the manner of construction of such buildings as this one.   He testified in part, to-wit: 'I went to the building and the scaffold had been partly erected.   Mr. Beck and I finished the

balance of the scaffolding at Thirty-fifth street and Ellis avenue. Then he showed me what he wanted me to do, and I looked up at the hole in the stone and asked him what was the cause of that breaking away. The break was in the corbel on Thirty-fifth street. I asked him if there was any weight on the nose of the corbel stone, and he said there was not. He said he had the mortar all sawed out. I said, 'What made that piece fall away there?' and he said, 'The stone-cutter, in drilling that anchor hole in there, the piece broke away and came down.' So he said the stone-cutter strained the stone when he was drilling for the anchor. The anchor is a piece of iron about an inch in diameter. It came down from the floor above. I don't know what it was fastened to, but it came down and was let into the corbel stone about three or four inches, to sustain the weight of the corbel from falling out into the street.

"Q. 'And was it fastened below—screwed in?

"A. 'No; it was leaded. Boiling lead was run around the iron. I asked him then, the second time, about the mortar. I asked him if there was any mortar in that stone around the top of the corbel stone, and he said no, he had it all sawed out, and there was nothing in there at all. There is no weight on that, he said. The wall is faced with stone, and behind is brickwork that is carried up.

"The court: 'The wall is really brick and faced with stone?

"A. 'Yes, the brickwork is about eighteen inches thick. The first story is called the basement. It is about fifteen feet to the top of the corbel stone. The corbel is above the first story.'

"It is shown from this and other evidence that appellee was familiar with the ordinary methods of construction of such buildings, and that he suspected that the cause of the break in the corbel stone was because the mortar which should have been placed between the cor-

bel and ashlar stone above at the time of the construc-
tion of the building had not been removed, as should
have been done in proper construction.   Appellee also
says that the seam or joint between the corbel stone and
ashlar above it was about eighteen inches above him;
that he could not see it from where he was working be-
low, and the evidence shows that while he was so work-
ing the corbel stone gave way, broke down the scaffolding
on which appellee was at work and injured him.  Whether
or not this mortar had been sawed out from between the
corbel stone and ashlar, as represented by Beck to ap-
pellee, was a question in dispute on which there was a
conflict in the evidence.   There was also a question on
which there was a conflict in the evidence as to whether
the failure to saw out the mortar, if such was the fact,
was a sufficient cause to account for the giving way of
the corbel stone, and also whether that was what caused
it to give way and fall.

"From a careful consideration of the evidence in these
respects (which it seems unnecessary to set out in detail)
we think it justified the jury in finding, as it must have
done, that the mortar was not sufficiently sawed out to
prevent a pressure of the ashlar stone from above on the
corbel, and that that fact was a sufficient cause for and
did cause the giving way of the corbel stone, and the
consequent injury to appellee.

"The questions of assumed risk and contributory neg-
ligence, so thoroughly and fully presented by appellant's
counsel, were in our opinion, under the facts of this case,
purely questions of fact for the jury and not of law for
the court.   We do not, therefore, review the numerous
cases cited, believing, as we do, that there was no error
in submitting the case to the jury,—at least upon the
first of the amended counts of December 7, 1897.  (*Offutt* v.
*World's Columbian Exposition*, 175 Ill. 472, and cases there
cited.)  Appellee had the right to rely on what Beck told
him in regard to the mortar being sawed out, and it was

not negligence, as matter of law, for him to continue his work after this statement from Beck, when appellee was not in a position to see the danger.

"Objection is also made to the admission of certain evidence relating to the manner of construction of the building and its effect upon the corbel stone in question, but we do not think it of importance, and there was no reversible error in the court's rulings in this regard.

"The judgment is affirmed."·

*Judgment affirmed.*