## THE CITY OF CHICAGO

v.

## JOHN A. SPOOR et al.

*Opinion filed April 18, 1901—Rehearing denied June 7, 1901.*

1. MUNICIPAL CORPORATIONS—*rule as to right of recovery for injury to means of ingress and egress.* The right of recovery for injury to property by cutting off access to the street from the construction of a public improvement is limited to cases where it appears there has been some direct physical disturbance to a right, public or private, which the plaintiff enjoyed in connection with his property and which gave it additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally.

2. SAME—*property owner has no right that city shall not increase facilities for travel.* The owner of property abutting upon the street has no right that traffic shall go past in a particular manner or that the city shall not increase the facilities for through travel.

3. SAME—*when testimony on question of damages is improper.* In an action by the owner of property abutting upon a street for damages arising from the construction of a viaduct, testimony upon the question of depreciation in market value of the property should be stricken out, on motion, when shown by cross-examination to be based largely upon the theory that the construction of the viaduct, which facilitated through travel, had rendered the property less valuable for business purposes by causing a diversion of custom from that part of the street on the part of persons who had formerly passed to and from work, and persons who had formerly been required to transfer and wait for cars at that point.

4. SAME—*defective exercise of unquestioned power is no protection to city.* If a city has power to pass an ordinance for the construction of a public improvement, the fact that such power is defectively exercised under an order of the city, and not under an ordinance, is no protection to the city in an action for damages to abutting property, resulting from such construction.

5. INSTRUCTIONS—*evidence not proper for any purpose cannot be controlled by instruction.* If evidence is competent for one purpose and not for another its application may be controlled by an explanation to the jury at the time it is admitted, or, in some cases, by an instruction; but if it is not proper for any purpose it is error to submit it to the jury.

6. SAME—*when modification of instruction is erroneous.* In an action for damages to abutting property from the construction of a via-

duct, a modification of the defendant's correct instruction on the question of diversion of traffic is improper which may be readily understood to hold that it is proper to consider diversion of traffic as affecting the market value if the suit is for damages to abutting property, though not if the suit is for loss of profits in business.

7. EVIDENCE—*evidence as to effect of improvement upon other lots not connected with property in suit is immaterial.* In an action for damages to abutting property from construction of a viaduct, it is proper for the court to refuse to allow inquiries as to the effect of the improvement upon other lots in the same block but separated from the property in suit by an alley and fronting on another street.

8. TRIAL—*when defendant does not adopt plaintiff's theory of the law so as to preclude complaint.* Where plaintiff's witnesses do not state the elements of damage upon which they base their estimates of depreciation in market value, the defendant may cross-examine them for the purpose of showing the basis to be unsound and illegal and of having the testimony stricken out; and he does not adopt such basis as the correct theory of the case by so doing, nor by introducing evidence to contradict their statements after the court has refused to rule the testimony out.

9. SAME—*when remark by judge in presence of jury is error.* After the judge has admitted a photograph in evidence showing the situation of the property in dispute, it is error for him to say, in the presence of the jury, that "it is for the jury to say how much stock they take in testimony of that kind."

MAGRUDER, J., dissenting.

*City of Chicago* v. *Spoor*, 91 Ill. App. 472, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

CHARLES M. WALKER, Corporation Counsel, and THOS. J. SUTHERLAND, for appellant:

The "order" under which the Halsted street viaduct is claimed to have been built is void. For this reason the construction of the viaduct created no liability on the part of the city to appellees, and hence the verdict and judgment of the circuit court are contrary to the law and the evidence. · *Chicago* v. *Lithographing Co.* 6 Ill. App. 560; *County of Cook* v. *Lowe,* 23 id. 651; *Marysville* v. *Schoonover,*

78 id. 189; *Rigney* v. *Chicago*, 102 Ill. 64; *Hibbard & Co.* v. *Chicago*, 173 id. 91; *Railroad Co.* v. *Chicago*, 174 id. 439.

An action does not lie against the city for an injury to real estate, caused by work not done in pursuance of a valid ordinance, whether in a public street or otherwise. *East St. Louis* v. *O'Flynn*, 119 Ill. 200; *Hibbard & Co.* v. *Chicago*, 173 id. 91; *Chicago* v. *Ramsey*, 90 Ill. App. 271.

The circuit court erred on the trial in denying the several motions of appellant's counsel to strike out the testimony of the several witnesses for the appellees as to the alleged diversion of traffic by reason of the construction of the viaduct and the alleged damages therefrom to the property of appellees. Injury from diversion of traffic is not actionable. *Hohmann* v. *Chicago*, 140 Ill. 226; *Osgood* v. *Chicago*, 44 Ill. App. 534; *Parker* v. *Catholic Bishop*, 146 Ill. 15; *Railroad Co.* v. *Scott*, 132 id. 429; *Railroad Co.* v. *Dressel*, 110 id. 91; *Chicago* v. *Baker*, 98 Fed. Rep. 832.

Loss of business resulting from diversion of traffic is not actionable. *Sanitary District* v. *McGuirl*, 86 Ill. App. 398; *Railroad Co.* v. *Lostant*, 167 Ill. 85; *Braun* v. *Railroad Co.* 166 id. 437; *Railway Co.* v. *Walsh*, 105 id. 153; *Railroad Co.* v. *Francis*, 70 id. 238.

WINSTON & MEAGHER, (SILAS H. STRAWN, and RALPH M. SHAW, of counsel,) for appellees:

It is the law of the State of Illinois that private property shall not be taken or damaged for public use without just compensation. Const. art. 2, sec. 13; *Rigney* v. *Chicago*, 102 Ill. 64.

If, as the result of a public improvement such as the one in the case at bar, private property is damaged, the city is liable for such damage. *Marshall* v. *Chicago*, 77 Ill. App. 351; *Chicago* v. *Cram*, 80 id. 350; *Chicago* v. *Baker*, 86 Fed. Rep. 753.

If, as the result of the construction of the viaduct, the fair cash market value of the property was depreciated, then the plaintiffs are entitled to recover as damage the

amount of such depreciation. In determining what the difference is, the jury are entitled to consider every fact and circumstance which a good faith intending purchaser of the property would have considered immediately prior to the construction of the viaduct, and every fact and circumstance caused by the construction of the viaduct which a good faith intending purchaser would have considered immediately after its construction. *Chicago* v. *Cram*, 80 Ill. App. 350; *Chicago* v. *Burcky*, 158 Ill. 103; *Joliet* v. *Adler*, 71 Ill. App. 456; *Jacksonville* v. *Loar*, 65 id. 218; *Omaha* v. *Flood*, 77 N. W. Rep. 379.

Where a municipal corporation has authority over a general subject, and any act or acts within its power are done by the corporation under the general authority, the corporation is responsible for the results thereof. Under such circumstances the municipality is liable for the result of the construction of a public improvement, even if in authorizing the construction it proceeded irregularly. Elliott on Streets and Roads, (ed. of 1896,) 356; *Pekin* v. *Newell*, 26 Ill. 320; *Chicago* v. *Turner*, 80 id. 419; *Chicago* v. *Railroad Co.* 105 id. 73; *Crossett* v. *Janesville*, 28 Wis. 420; *Stanley* v. *Davenport*, 2 N. W. Rep. 604; *Chicago* v. *Railroad Co.* 105 Ill. 73; *Chattanooga* v. *Geiler*, 13 Lea, 611.

When work is done on the streets of a city or village the presumption is that it was done by the authorities of said city or village. *Chicago* v. *Johnson*, 53 Ill. 91; *Jefferson* v. *Chapman*, 127 id. 438.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Block 12 of the superior court partition of the west half of the north-west quarter of section 4, township 38, range 14, in Cook county, is in the city of Chicago, and is bounded on the north by Forty-first street, on the east by Emerald avenue, on the south by Root street and on the west by Halsted street. The block contains thirty-

four lots, and in 1896 appellees were the owners of the entire block except five lots. The conveyance to them was of the whole block except lots 18, 19 and 30, and they afterward sold lots 20 and 21. The west side of Halsted street was the private property of the Union Stock Yards and Transit Company, and Root street, Forty-first street and Fortieth street (which was the next one north) extended east from Halsted street but did not cross that street. Fortieth street, one block north of this property, was occupied with seventeen railroad tracks of the Union Stock Yards and Transit Company. These tracks spread out in Fortieth street near the entrance to Halsted street and the stock yards, and occupied three hundred and fifty feet of Halsted street. Formerly, horse cars ran on Halsted street to Fortieth street and stopped. The passengers had to get off, cross the railroad tracks on foot and transfer to a car on the opposite side. In October, 1895, the city council ordered the street railway company to run its cars over the railroad tracks without causing passengers to transfer. By a conference between the Union Stock Yards and Transit Company, the City Railway Company and the appellant it was agreed that a viaduct should be built over the tracks, and the City Railway Company and the Union Stock Yards and Transit Company agreed to defray the expenses of the viaduct. The object of the viaduct was to carry the street traffic over the tracks on account of the dangers and delays at the crossing. On January 6, 1896, the city council passed an order providing for the construction of the viaduct, beginning in front of said block 12 and running north. The stock yards extended from a little north of Thirty-ninth street as far south as Forty-seventh street, on the west side of Halsted. The viaduct was begun about the middle of February, 1896, and completed in September of that year. The approach on Halsted street began in front of lot 25, and rose about one foot in thirty from that point north to lot 34, at the north-west corner of the

block. At the north-west corner of lot 34 the approach was about nine feet above the natural surface, and there was an approach on Forty-first street adjoining the block connecting with the approach on Halsted street. On lot 25 there was a two-story frame building which did not belong to appellees and the other lots were vacant. After the completion of the viaduct appellees began this suit in the circuit court of Cook county to recover damages alleged in their declaration to have been sustained to lots 25 to 34, inclusive, except lot 30, by destroying the free and convenient access to and from the premises from the street and cutting off light and air. Additional counts were filed in 1897 and 1899, charging interference with access to and from the lots. Appellant pleaded the general issue, and there was a trial. The jury returned a verdict of guilty and assessed appellees' damages at $10,750, and judgment was entered on the verdict. An appeal was taken to the Appellate Court for the First District, where the judgment was affirmed, and this appeal was then taken from the judgment of the Appellate Court.

On the trial five witnesses were called by plaintiffs, and each one testified to the fair cash market value of the property before the passage of the order for the viaduct and such value after the completion of the viaduct, and each one said that he attributed the change in valuation to the construction of the viaduct. The different witnesses placed the market value before the viaduct was built at sums ranging from $150 to $200 a front foot and from $75 to $90 afterward. The lots for which damages were claimed had a total frontage of two hundred and twenty-five feet on Halsted street. On the direct examination no inquiry was made of either of these witnesses, and nothing was developed, as to the nature of the alleged injury to the property, the elements of damage included or the basis for his judgment. These witnesses were cross-examined by defendant for the pur-

pose of ascertaining on what basis they estimated the
damage. The most prominent element of damage in the
minds of the witnesses was the character of the traffic
and travel on Halsted street after the viaduct was built
and the fact that fewer people came from the stock yards
upon the street, so that less business could be done there.
The plaintiff Spoor was one of these witnesses, and on
cross-examination he said that before the viaduct was
built people came from the stock yards over the tracks
at Fortieth street upon Halsted street, and that fact
brought business to the shops and stores; that people
coming from the stock yards a block north of this prop-
erty could not come on Halsted street, so that their trade
was lost; that after the viaduct was built there was
more traffic on the street than before, but that it was
not of a character to stop there; that instead of the old
horse cars that came along and stopped on each side of
the tracks, there was a trolley system and the cars ran
right through, stopping only at street crossings; that the
blocking of the tracks across Halsted street was a benefit
to the property and it was an injury to this property to
have through travel; that the advantage to the property
resulted not so much from traffic on the street, as the
ability of the traffic to stop and get at the place, and
that the through traffic was a serious damage to the prop-
erty because people did not walk on the street but went
past on cars. Another witness, John W. Sweeney, testi-
fied that the former condition, when people got off and
walked across the tracks and found other cars or had to
wait, was a benefit to the property; that it took so long
to go down town that people patronized their neigh-
bors and left their money there; that men working in the
stock yards came out at Fortieth street, a block north,
and came upon Halsted street and patronized the places
there, and that they spent their money and made busi-
ness there, and business was diverted by turning it in
other directions. He attributed the depreciation in value

of the property largely to these causes, and said the fact of building the viaduct killed the business there, and taking that away left the property of little value. The witness was asked what the damage was by reason of this diversion of business which formerly came from the stock yards and from the tracks at Fortieth street, but the court sustained an objection to the question. The defendant asked the witnesses to separate the damages resulting from the fact that people did not walk or stop on the street but went through on trolley cars and the diversion of traffic that formerly came on Halsted street, from the interference with ingress and egress to and from the lots, and other causes of damage. The witnesses could not divide up the damages or distinguish between the different causes, and the defendant then moved to strike out the testimony as to depreciation in market value by reason of the construction of the viaduct, because the estimate included elements of damage for which there could be no recovery, but the motion was overruled. It appears from the statements of the court in ruling on the objections that the view of the court was, that while a party could not sue and recover for loss of profits to business on account of a viaduct, yet if there was an injury to abutting property there could be a recovery for everything that went to make up the market value of the lots, whether it was a diversion of traffic or whatever it might be. This being a suit where access to the property was affected, the court seems to have held that everything resulting from the improvement which affected unfavorably the utility of the property for business purposes was an element of damage.

The rule that there can be a recovery for any injury to property by cutting off access to a public street whereby the property is permanently damaged and depreciated in value was established in *Rigney* v. *City of Chicago*, 102 Ill. 64. The court, however, limited the right of recovery in this language (p. 80): "In all cases, to warrant a re-

covery it must appear there has been some direct physical disturbance of a right, either public or private, which the plaintiff enjoys in connection with his property, and which gives to it an additional value, and that by reason of such disturbance he has sustained a special damage with respect to his property in excess of that sustained by the public generally." Afterward, in *Lake Erie and Western Railroad Co.* v. *Scott,* 132 Ill. 429, where there was a right to the use of a highway in connection with the farm of Scott, he was allowed to recover damages for interference with the use of the highway by the location of a railway, lessening the value of the farm. In neither of these cases was any damage allowed for a diversion of travel or traffic from the highway or street, but in *Hohmann* v. *City of Chicago,* 140 Ill. 226, the question involved in this case was considered. In that case Hohmann owned a leasehold estate in premises in which he carried on the saloon business in the first story and occupied the second story as a residence. The declaration charged the city with erecting a viaduct on Northwestern avenue, one of the approaches being in front of the said premises, thereby obstructing the access to said premises and diminishing the easements of light and air. It was alleged that the leasehold estate was depreciated in value and the traffic and travel of Northwestern avenue was lessened, diverted, obstructed and cut off, so as to diminish the receipts of Hohmann's business. Evidence of the same character as in this case, to the effect that a large number of persons employed in railroad yards had formerly patronized plaintiff, and that after building the viaduct his business fell off and the market value of his leasehold was diminished, was offered and rejected. Persons coming on foot from the railroad yards preferred, as in this case, to go some other way rather than ascend the stairway up to the roadway of the viaduct. This court recognized the rule that plaintiff had a right to have the avenue kept so as not to cut off access to his premises,

and that if it was cut off it was a matter proper for the jury to consider, but it was held that a diversion of customers was not an element of damage for which Hohmann could recover. The effect of the evidence would have been to show that less people traveled along the avenue than formerly and the number of customers was diminished, but it was held that Hohmann had no legal interest in the amount of general travel by the public along the avenue and no legal right to complain that it was lessened.

An owner of property has no legal right that traffic shall go past in horse cars or on foot, or that a city shall not increase the facilities for through travel. Any scheme of rapid transportation would have had the same effect on this property detailed by the witnesses, and the only relation the viaduct had to the trolley was, that it created facilities for that method of transportation. It was not a right of the plaintiffs, as against the city, to have Halsted street maintained in such a way that people coming from the stock yards would find it convenient to come out upon Halsted street, so as to make more travel and traffic by the property. As they had no legal right of that kind there was no infringement of any right, and there could be no recovery for resulting damages. It is clear that the amounts estimated by plaintiffs' witnesses consisted, in large part, of damages of that character. With one exception they made no distinction as to the damage between lot 25, where the approach commences and access is hardly obstructed at all, and lot 34, where the approach is about nine feet high; and the lots are all of the same character, being vacant and not used for any kind of business. As the estimates included damages for injuries to supposed legal rights which had no existence, the court erred in not striking out the testimony when moved to do so.

It is argued on the other side that it was proper to leave the estimates of damage by plaintiffs' witnesses

before the jury, although they included damages not recoverable, and then control the evidence by an instruction. It is plain that the injury to the defendant could not be repaired by an instruction. The witnesses themselves were not able to separate the damages and state what part of their estimate rested on an improper basis. The jury could not separate what the witnesses who made the estimate could not, and no instruction would enable them to do so. Furthermore, the rule is not as claimed. If evidence is competent for one purpose and not for another its application may be controlled by an explanation to the jury when it is admitted, or, in some cases, by an instruction; but where it is not proper for any purpose it is error to submit it to the consideration of the jury. The evidence of damages resulting from diversion of traffic or changing the method of transportation on the street was not legitimate for any purpose, and opinions of witnesses based on depreciation from those causes should have been excluded.

Again, the instructions, in our opinion, did not put before the jury the correct rule. There were some instructions on the subject, and the view of the court is fairly shown by instruction No. 7 which was asked by the defendant and modified by the court. That instruction as asked was as follows:

"The jury are instructed that the plaintiffs herein are not entitled to recover because of any alleged injury resulting to the fair cash market value of said premises because of any alleged diversion of traffic off from Halsted street, in front of said premises, by the construction of said viaduct, even if they believe, from the evidence, that any such diversion of traffic has in fact resulted from such cause."

But the court added the following: "But if you believe, from the evidence, including your view of the premises, that the fair cash market value of the premises was decreased by reason of the obstruction to the ingress and

egress thereto caused by said public improvement, this would be an element of damage if such obstruction is shown by the evidence, including your view of the premises. Diversion of traffic as a result of a public improvement is an element of damage which is considered, in law, too remote and speculative to become the basis of recovery in a suit wherein a person seeks damages or loss of profits to his business from the author of such improvement, because it would be impossible to ascertain how many persons were diverted from this accustomed route by reason of the improvement alone and how many from other causes or from mere caprice. But if a public improvement depreciate the value of abutting property, then every element which the jury may find, from the evidence and its view of the premises, which directly affects the market value of the property by reason of the public improvement, so as to make it of less value upon the market after such public improvement than it was before, is proper for the jury to consider in a suit where the question is not as to loss of profits to business, but for damages to abutting property."

The instruction as asked stated that the plaintiff could not recover because of any alleged injury resulting from a diversion of traffic from Halsted street. The qualifications added by the court were, first, that obstruction to the ingress and egress to and from the premises would be an element of damage, which was foreign to the subject of the instruction; second, diversion of traffic is an element of damage too remote and speculative to be the basis of recovery where a party seeks damages for loss of profits to his business; but third, if the question is not loss of profits in business but damages to abutting property, then every element which directly affects the market value of the property by reason of the public improvement is proper for the jury to consider. Defendant was entitled to a clear statement of the rule of law as asked, that diversion of traffic was not an element of

damage, without annexing a statement that something else would be; and we think the instruction as finally modified, in its discursive form, might readily be understood as laying down the rule that it is proper to consider diversion of traffic affecting the market value of the property if the suit is for damages to abutting property, but not if the suit is for loss of profits in business. This is not materially different from the statements of the court in ruling on the questions raised on the evidence. It could not be said that if a party should sue for damages on account of a diversion of traffic he could not recover because he had no legal right which had been infringed, but if he sued for damage by cutting off access to his property he could include damages from diversion of traffic as to which he had no legal right.

It is also urged that the defendant waived its right to complain of the errors by the cross-examination of plaintiffs' witnesses and introducing evidence that increased facilities for travel benefited the property. Counsel say that plaintiffs' witnesses said nothing about the elements of damage on which they based their estimates in the direct examination, but that defendant brought it out by cross-examination. It is true that a party cannot adopt a theory of the law and then complain that the theory was not the right one; but here the defendant cross-examined the witnesses for the purpose of showing the basis of their estimate to be unsound and illegal and for the purpose of having the testimony struck out. Defendant did not adopt the theory against which it was protesting. Neither did the defendant waive its right by introducing evidence that better facilities for travel brought the property nearer to the business center, and did not injure it, as claimed by the plaintiffs. After the court had ruled that the testimony should remain in, it was the right of the defendant to contradict it. The defendant did not bring before the jury the diversion of traffic as a proper element of damage, but only showed that this

improper element was included in the estimate of plaintiffs' witnesses.

Complaint is made that the court refused to allow any inquiry as to benefits from the improvement to lots 22, 23 and 24, fronting on Halsted street south of the approach, and to the lots fronting on Emerald avenue. Defendant did not make any inquiry about the effect on the three lots which fronted on Halsted street and which were connected with the property as to which damages were claimed, but did make such inquiry as to the lots fronting on Emerald avenue, and the court refused to admit the evidence. The lots on Emerald avenue were separated from the other lots by an alley sixteen feet wide, and under the ruling in *White* v. *Metropolitan West Side Elevated Railroad Co.* 154 Ill. 620, the ruling of the court was right. These lots were not connected with the lots sued for, and plaintiffs could neither recover damages for injury to them nor defendant set up the alleged benefits. During the examination of one of defendant's witnesses a photograph was offered showing the location of buildings upon an approach to a viaduct and the appearance of such buildings. The court admitted the photograph, but said: "It is for the jury to say how much stock they take in testimony of that kind." The intimation was that the jury ought not to give any weight to the evidence. It was an interference with the function of the jury, and error. *Kennedy* v. *People*, 44 Ill. 283; *Andreas* v. *Ketcham*, 77 id. 377.

At the close of the evidence the defendant moved the court to direct a verdict for it, which the court refused to do. It is argued that the order under which the viaduct was built was void, and for that reason there was no liability on the part of the defendant. The argument is based on the proposition that the viaduct could only be legally constructed in pursuance of an ordinance, and as it was constructed under an order of the city council the city was not liable. The improvement was not be-

190—23

yond the authority of the defendant, and where there is power to pass an ordinance or undertake an improvement, any irregular or defective exercise of the power is no protection to the city. (Elliott on Roads and Streets, —2d ed.—sec. 503.) It is immaterial whether the defendant proceeded regularly or irregularly in the exercise of its power.

We have noticed the most material questions raised by counsel, and being of the opinion that the defendant did not have a fair trial upon the proper basis as to damages, the judgments must be reversed.

The judgments of the Appellate Court and circuit court are reversed and the cause is remanded to the circuit court.                    *Reversed and remanded.*

Mr. JUSTICE MAGRUDER, dissenting:

I do not concur in this opinion or in the conclusion reached. I think that the opinion of the Appellate Court, affirming the judgment of the circuit court, correctly disposes of the questions involved. That opinion is, in part, as follows:

"It is claimed for appellant that the court, at the close of all the evidence, should have directed a verdict for it, because there was no valid authority shown for the construction of the viaduct in question, and, therefore, that the city was not liable in damages by reason of its construction.

"There was offered in evidence a copy of the resolution of the city council, dated January 6, 1896, and passed on that day, which, after reciting the previous orders of the council and certain matters showing the necessity for the viaduct by reason of the crossing at grade of the railroad tracks of the Union Stock Yards and Transit Company and the introduction of electric cars by the Chicago City Railway Company on Halsted street, by which the mayor and commissioner of public works are directed to cause plans to be forthwith prepared for the viaduct

in question, and to let the necessary contracts for the construction of the same, upon obtaining from said two companies, or either of them, an agreement to provide all moneys required to meet such contract. It was stipulated on the hearing between counsel that the construction of the viaduct under said order was commenced about the middle of February, 1896, and was completed about the end of September, 1896. This order of the common council and a stipulation that the viaduct was constructed under the order is sufficient, in our opinion, to fix the liability of the city of Chicago for any damages to appellees' property resulting therefrom, and it is immaterial, as contended for appellant, that it was not shown that any ordinance was passed by the common council for the construction of the viaduct, nor that the viaduct was constructed under a contract executed with the city, nor whether the money to pay for the viaduct came from the city treasury, nor that an appropriation had been made to pay for the cost of the work. The authorities cited by counsel for appellant in this regard are inapplicable. It is sufficient to fix the liability of the city that the viaduct in question was constructed by means of or through the action of the common council. (*City of Chicago* v. *Turner*, 80 Ill. 419, and cases cited; *City of Chicago* v. *Chicago and Western Indiana Railroad Co.* 105 id. 73; *Culbertson & Blair Packing Co.* v. *City of Chicago*, 111 id. 651). Indeed, when such a structure as a viaduct is found in the streets of a city, that, of itself, is presumptive evidence that the city is responsible for its erection. (*Village of Jefferson* v. *Chapman*, 127 Ill. 438; *City of Chicago* v. *Johnson*, 53 id. 91.)

"In the *Turner* case, *supra*, it was said (referring to the case of *City of Pekin* v. *Newell*, 26 Ill. 320): 'If the city is authorized to construct a highway in a particular manner but does it in a different one, it will be answerable in damages to a party sustaining injury upon it as much as though it had not exceeded or deviated from its authority. So there, also, was no question of power, but

only as to the lawfulness of its execution,'—and held that a municipality is liable for its acts within its general power, though irregularly authorized or done. The same principle is announced in the second case above cited, (105 Ill. 73,) in the following language: 'We recognize the doctrine to be, that the unauthorized acts of municipal officers are regarded as the acts of the corporation, provided the acts are performed by that branch of the municipal government which is invested with jurisdiction to act for the corporation upon the subject to which the particular act relates.'

"In the *Culbertson case, supra,* which was an action upon the case for damages in consequence of the construction of a viaduct which was partly paid for by a railway company and the work done under the joint superintendence of the department of public works and the engineer of the railway company, it was held that the company was not liable for damages sustained by adjacent property owners, and that the improvement was the property of the city; that it alone was liable for damages to the property owner, as it alone had power to go upon the street and erect the viaduct. It is not, and cannot be successfully, contended that the city had ample power to construct this viaduct.

"For appellant it is claimed that the trial court erroneously refused to allow it to be shown, on the cross-examination of the appellee Spoor, whether he claimed damages for other lots owned by appellees in the same block as those for which the suit was brought, some fronting upon South Halsted street and immediately south of the lots in question, and the others fronting on Emerald avenue and separated from the lots in question by an alley sixteen feet wide; also, in refusing to allow appellant to show by witnesses called for the defense that those same lots south of the lots in question on Halsted street and the lots fronting on Emerald avenue were benefited by the construction of the viaduct in question.

"So far as concerns the lots on Halsted street south of the lots for which damages are claimed, there was no evidence offered, either on the cross-examination of Mr. Spoor or by appellant's witnesses, so far as shown by the record, and therefore that part of the contention need not be further considered.

"As to the lots fronting on Emerald avenue we are of the opinion that the evidence was properly excluded, because it is wholly immaterial in this case what benefits, if any, were caused by the construction of the viaduct to the lots on Emerald avenue, they being separated from the lots in question by an alley sixteen feet wide. It was held in the case of *White* v. *West Side Elevated Railroad Co.* 154 Ill. 620, that where a railroad company sought to condemn a part of a lot in one block, and the defendant, by cross-petition, sought to collect damages to another block owned by him and separated by a street thirty feet wide from the lot sought to be condemned, no such damages could be allowed. The court say: 'But it is said the two tracts of land were purchased to be used for one purpose, as one tract of land. Whatever may have been the intention or purpose in purchasing the two tracts of land can make no difference. The two tracts of land must be considered as they existed when the proceeding was instituted. At the time, they were separated by a public street. They were in no manner connected, and never could be connected without the consent of the city, which may never be obtained. They were not used for any common purpose as one tract of land. Two tracts of land might be so connected and used as to constitute but one tract, and in such a case, in a proceeding to condemn a part, it would be proper to consider the damages to the whole. But this record presents no such case.' To like effect, in principle, is the case of *Metropolitan West Side Elevated Railroad Co.* v. *Johnson*, 159 Ill. 434.

"We see no reason why the principle of these cases is not applicable here. Appellant can in no way be con-

cerned as to any alleged benefit which is claimed to have accrued to appellees as to lots owned by them not shown to be used so as to constitute one tract, but separated from the lots in question by a public alley. If such were the law, appellant could claim the right to set off any benefits accruing to property, however remote from the property which appellees claim to be damaged.

"It is claimed that appellees have been allowed damages to their property by reason of what counsel for appellant terms a diversion of traffic from South Halsted street, and, therefore, that the evidence of certain witnesses in their behalf should have been excluded from the jury. The witnesses called for appellees testified, on their direct examination, as to their opinion of what the damage was to appellees' property by reason of the construction of the viaduct in question, and by that alone. They were asked no questions whatever as to the several elements on which they based their opinion as to said damage. Plaintiffs nowhere, in making their case, claimed or sought to show as an element of their damage that there had been any diversion of traffic from Halsted street and from the front of their property. In fact, Mr. Spoor, one of the appellees, said on his cross-examination that he did not think there had been any diversion of travel from the property if the traffic that goes on the cars was considered; that there was probably more travel on Halsted street than before the viaduct was put up, but it was all through travel, and that he did not say that a part of the damages to the lots in question had resulted by the diversion of traffic, and explained that the property, after the construction of the viaduct, was upon grade; that it was impossible for wagons or anything to stop on the approach to the viaduct; that the street cars ran very rapidly over it, and before the viaduct was built people who came from the stock yards, the main entrance of which was very near to his lots, came out upon the street to this property, which was

occupied for shops and business purposes, and which the viaduct had made it impossible to use; that the viaduct had placed a stone wall there in front of plaintiffs' property, which shut off the movement of people in the direction of plaintiffs' property from the stock yards. On re-cross-examination of this same witness counsel for appellant asked the witness if he could divide up the damage that had come to this property by reason of the construction of the viaduct, so that he could tell what part of the damage came from the diversion of trade and what had resulted from other causes, to which the witness replied that he could not tell and could not testify any amount. Counsel for appellant then moved to strike from the record the testimony of the witness as to the depreciation of the market value of the property by reason of the construction of the viaduct, because any damage by reason of the loss or diversion of traffic from the street, caused by the construction of the viaduct, could not be recovered. The motion was overruled, and, in our opinion, was properly overruled. (*City of Chicago* v. *Jackson*, 88 Ill. App. 130).

"It is true, as held in the case of *Hohmann* v. *City of Chicago*, 140 Ill. 226, that diversion of customers from plaintiff's saloon was not an element of damage for which there could be a recovery, but it was not claimed in that case that access to plaintiff's premises was cut off, as it is claimed in the case at bar, which the court held was a matter which it was proper for the jury to consider in determining whether the plaintiff was entitled to damages. The appellant was entitled to show, on cross-examination, all the elements on which the witness based his opinion as to the damages caused by the construction of the viaduct, and if it appeared from the cross-examination that in part the opinion of the witness was based on matters improper for the jury to consider, that did not render the whole of the witness' evidence improper. In so far as the opinion of the witness was based upon

an improper element of damage, that could be controlled by an instruction to the jury, which was in this case asked in the fifth and seventh instructions for appellant, which were given in a modified form, and which, in express terms, tell the jury that there could be no recovery of damages in the case by reason of the diversion of traffic as a result of the improvement, and that the jury were to determine, from the evidence and their view of the premises, whether or not the fair cash market value of the property was less after the viaduct was constructed, by reason thereof, than it was before it was constructed, and if it was less, then their verdict should be for the plaintiffs, and if not, their verdict should be for the defendant.    Moreover, as we have seen, the main contention of the appellant was, that instead of there being a diversion of traffic caused by the construction of the viaduct, it produced six witnesses, at least, who testified that the traffic in front of the property had been greatly increased, and therefore that the value of the plaintiffs' property had been increased by reason of the construction of the viaduct, and it asked, and the court gave, instructions directing the jury that it had the right to consider the increase of traffic upon the street as an element of benefit to the property in question.    Appellant thus having brought before the jury, by its cross-examination of appellees' witnesses, the element of diversion of traffic from plaintiffs' property, and having attempted to show by its own witnesses that there had been a great increase in traffic upon the street in front of the property, cannot now be heard to complain of the rulings of the court if an improper element of damage was brought to the consideration of the jury by its own action. *Jeffery* v. *Robbins*, 73 Ill. App. 353; *Chicago and Great Western Railroad Co.* v. *Wedel*, 44 id. 215; *Chicago Forge and Bolt Co.* v. *Major*, 30 id. 276; *Watson Cut Stone Co.* v. *Small*, 80 id. 328; affirmed 181 Ill. 366; *Moyer* v. *Swygart*, 125 id. 262; *Illinois Central Railroad Co.* v. *Latimer*, 128 id. 163).

"Numerous other points are made by counsel as to the rulings of the court in refusing to exclude from the jury the evidence of other witnesses of appellees on the matter of diversion of traffic, but what has been above said in our opinion applies to these rulings with reference to these witnesses and need not be here repeated.

"Counsel for appellant attempted to show by the cross-examination of plaintiffs' witnesses the values of property in the vicinity of the property in question and on other streets, but the evidence was ruled out. We think the matter was within the discretion of the court, and there was no error in excluding such cross-examination. And especially is this true because great latitude was given to counsel by the court in the cross-examination of the witnesses, in order to show their experience and the basis upon which they formed their opinions as to the damage to the plaintiffs' property.

"It is claimed that the court erred in refusing to allow appellant's counsel to prove by one of its witnesses what the cost of the lots in question was at the time of their purchase by appellees in September, 1894, taking as the sole basis of such cost the total consideration named in the deed, by which they acquired title to numerous other pieces and parcels of land besides the lots in question. The witness was, in effect, asked to apportion the total cost to the different lots. There was no error in this respect. It did not appear that the witness knew anything whatever as to the separate valuations put upon the lots in question by the parties to the deed, as distinguished from other property conveyed by the deed, and the consideration named in the deed was a lump sum for the property described therein.

"It is further claimed that the court erred in refusing to allow appellant's counsel to prove that there had been a general depreciation in the value of property in the city of Chicago since the year 1893, to the extent of from twenty-five to sixty-five per cent. We think there was

no error in this regard, because the proposed evidence was in no way limited to a time at or near the period of the construction of the viaduct.

"The claim is made that serious detriment was caused to the interests of appellant by divers remarks of the court to appellant's counsel in the course of the trial, by way of comment upon his conduct in the trial, the character of the evidence introduced and sought to be introduced on behalf of the city, and in other respects, which it is claimed were calculated to prejudice the jury as to the defense made by the city. It is impossible to reproduce in this opinion, without unduly extending it, the many different remarks of the court complained of, and the proceedings and language of counsel leading up to the same. It seems sufficient to say that we have carefully read the portions of the record referred to in the abstract and briefs of counsel for both sides, and have reached the conclusion that the language and methods of counsel for appellant were calculated to annoy and irritate the trial judge; and while some of the court's remarks to appellant's counsel in criticism of his conduct and commenting upon certain evidence offered and admitted were improper, they were caused by his annoying and harassing methods in repeatedly persisting in his efforts to get before the jury evidence which the court had repeatedly ruled was improper, and also by interposing, over and over again, objections to evidence which the court had overruled from time to time, and in delaying the progress of the trial by arguments of such objections after the court had ruled thereon.

"It appears from the record, though not abstracted nor referred to in any of the briefs, that the hearing of the cause, after it had proceeded for two days, was adjourned from day to day, for three consecutive days, because of the sickness of the trial judge. In the course of the trial, when appellant's counsel objected to the remark of the court that he was 'getting a lot of immate-

rial issues' before the jury calculated to mislead them as to the true issue of the case, the court replied that the jury was not to consider anything said by the court except when he was excluding evidence, or something like that—that the court was addressing its remarks to counsel; also, at the request of appellant's counsel, the court instructed the jury, by instruction No. 24, that it was not to 'consider any remarks of court or counsel during the introduction of the evidence in the course of the trial, or exceptions or objections made or taken by counsel upon either side, or the decision of the court upon any motions made by either of such counsel during the course of the trial, or decisions of the court in refusing to admit evidence offered by either side,' and the court added to the foregoing instruction the following words, viz.: 'The jury should ignore every consideration other than a desire to do right between the parties to this suit. It would be highly improper for you to consider in any manner, or to permit your judgments to be influenced by anything said by the respective counsel to each other, or by either counsel to the court, or by any remark made by the court to either one of the attorneys in this case. A court has no enemies to punish or favors to reward in a lawsuit, and this jury, I am convinced, will use their conscientious and best efforts to arrive at a verdict which will be based upon the evidence, aided by the instructions of the court, as given you in writing. Anything said by the court in discussing with counsel questions respecting the admissibility of evidence was not intended for your hearing, as the instructions which the court intends for the jury must be in writing, and it is your solemn duty to ignore oral remarks of the court, if heard by you, and to follow and be governed by this series of written instructions.' From all the foregoing considerations we are of opinion that there was no prejudicial error from the remarks of the court to counsel, and that no injury was done to the interests of appellant by its remarks during

the course of the trial.  We think that the trial judge endeavored to be fair and just as between the parties, and if any injustice was done it must be attributed to the course of appellant's counsel in the trial, and of this there can be no just cause of complaint.

"It is said there was error in the giving of appellees' second instruction, which is quoted in the statement preceding this opinion, because there was no proof that appellees were poor or rich men, or that the city of Chicago was bankrupt, or otherwise.  The evidence tends to show that appellees were rich men, but the instruction was given, no doubt, because of the statement of appellant's counsel to the court when he attempted to prove, on the cross-examination of the appellee Spoor, that the appellee Webb was a director in a corporation; that plaintiffs' counsel had gone into the pedigree of Spoor and that he ought to be permitted to go into the pedigree of his joint owner and to show his relation in business up to that time by cross-examination, to which the court replied that it was 'immaterial in this court whether Mr. Webb is a millionaire or the meanest pauper in America.'  It is well and generally known that the city of Chicago has control of great wealth, and no evidence in that regard was necessary.   We think there was no reversible error in this instruction.

"It is said that the third instruction should not have been given, because it was an abstract proposition of law and was prejudicial to appellant.   The abstract only shows the first sentence of this instruction, and there is nothing to indicate, either in the abstract or brief of appellant's counsel, that there was any part of the instruction omitted from the abstract.  A reading of the omitted part shows the application of the first part of the instruction complained of to the facts of the case, and shows that there could be no reasonable criticism of the instruction as a whole.   Such methods are not creditable to counsel in presenting a case to a court of review.

"And in this connection it may be observed that appellant's counsel has pursued a like course with regard to an alleged erroneous ruling of the court in refusing to permit the witness Spoor to testify what the effect of the viaduct upon the property was by the simple elevation of the grade, independent of effects from other causes. The abstract shows (page 38) that an objection to this question was sustained. At page 206 of the record the witness was re-called for further examination, and on page 207 and the following pages of the record it appears that appellant's counsel was given an opportunity to cross-examine the witness fully, the objections to the particular question as to which complaint was made that the witness was not allowed to answer were withdrawn, and an opportunity given to have the questions answered by the witness. No reference is made by appellant's counsel in his brief to this part of the record. No other comment is necessary.

"It is said that the fifth and seventh instructions asked by appellant and given in a modified form, as appears from the statement preceding this opinion, should have been given as asked, and that the giving of them in the modified form did not cure the error of letting go to the jury the testimony as to traffic and business hereinbefore referred to, the remarks of the court upon the trial, and its critical reflections upon appellant's counsel. The instructions, and the modifications thereof by the court, speak for themselves, and what has heretofore been said we think sufficiently answers the criticisms of counsel.

"Complaint is also made of the fifth, sixth, seventh and ninth instructions given for appellees, and that the fourth, sixth and eighth instructions asked by appellant were refused. We have read all these instructions in connection with the other instructions given, both on the part of appellant and appellees, and think there is no reversible error in any of the rulings of the court in respect thereto.

"The jury was fully and fairly instructed upon the law relating to the case. The amount awarded for plaintiffs' damages is $500 lower than the lowest estimate made by any of plaintiffs' witnesses. The jury viewed the premises, and evidently from such view and the testimony on behalf of the plaintiffs must have wholly discredited the evidence of appellant's witnesses, none of whom admitted any damage to the property by reason of the construction of the viaduct, but maintained that it had increased in value all the way from $2250 to more than $7000. Such being the case, we think their verdict should not be disturbed. (*Mitchell* v. *Illinois and St. Louis Railroad Co.* 85 Ill. 566; *Culbertson & Blair Packing Co.* v. *City of Chicago*, 111 id. 651; *Sanitary District* v. *Cullerton*, 147 id. 385; *Atchison, Topeka and Santa Fe Railroad Co.* v. *Schneider*, 127 id. 144; *Davis* v. *Northwestern Elevated Railroad Co.* 170 id. 595; *Cook & Rathborne Co.* v. *Sanitary District*, 177 id. 599).

"In the *Davis case, supra,* the court say: 'It appears that the jury examined the property and heard testimony, and they were authorized to take that testimony, in connection with their own judgment, into consideration in determining the just compensation, for the rule is, where there is a diversity of opinion and conflict of testimony among witnesses as to the value of the property proposed to be taken or damaged, and the jury have made a personal inspection, this court will not reverse on the ground that the damages are excessive or inadequate or that the evidence does not support the verdict, as the jury have a right to base their verdict to some extent upon their own examination of the property,'—citing several cases. In the *Cook case, supra,* the court, after stating that the testimony was conflicting and that the jury viewed the premises, the case being condemnation by the sanitary district, say: 'With such a diversity of opinion among the real estate dealers and such a conflict in the testimony, this court would not be justified in say-

ing the evidence does not support the verdict, and especially when the verdict is undoubtedly based upon an examination of the property by the jury, as well as the other testimony in the case.'

"The judgment of the circuit court is affirmed."