[S. F. No. 16040.   In Bank.   Mar. 4, 1942.]

MARY V. ROSE et al., Respondents v. STATE OF CALIFORNIA et al., Appellants.

714

C. C. Carleton, Frank B. Durkee, C. R. Montgomery and Robert E. Reed for Appellants.

Ray L. Chesebro, City Attorney (Los Angeles), William H. Neal and Leon T. David, Assistant City Attorney, Arthur W. Nordstrom, Deputy City Attorney, John J. O'Toole, City Attorney (San Francisco), Henry Heidelberg and Albert F. Skelly, Deputies City Attorney, Hugh B. Bradford, City Attorney (Sacramento), Archer Bowden, City Attorney (San Jose), F. Bert Fernoff, City Attorney (Oakland), Raymond M. Dunne, City Attorney (Stockton), C. M. Ozias, City Attorney (Fresno), J. Allen Davis and George E. Sandford, as Amici Curiae, on behalf of Appellants.

John T. Wentz and Booth B. Goodman for Respondents.

Thos. J. Straub, W. R. Dunn, Holbrook & Tarr, Leslie R. Tarr, Hill, Morgan & Bledsoe, Stanley S. Burrill, Charles P. McCarthy, Kenneth K. Wright and Meserve, Mumper & Hughes, as Amici Curiae, on behalf of Respondents.

CARTER, J.—Defendants appeal from a judgment for plaintiffs in an action for damages allegedly sustained as the result of the construction of an improvement in the street fronting plaintiffs' property.

This is one of a series of similar actions brought against the defendants by the owners of property fronting upon Jackson Street, in the town of Hayward in Alameda County, to secure compensation for damage allegedly caused by the construction of a subway or underpass in the center of Jackson Street. Although the actions were tried separately, and are before this court on separate appeals, the facts, rights and liabilities involved in each are substantially the same; there-

fore, the law applicable to each will be fully considered and determined herein.

Plaintiffs are and at all times pertinent to this action were the owners of approximately 3.05 acres of land fronting some 118 feet on Jackson Street in the town of Hayward. The property is devoted to a fruit orchard and is improved by a five room residence, windmill, tankhouse and barn, but has been zoned as "industrial property."

Jackson Street runs from East 14th Street in Hayward to Mt. Eden where it connects with the highway leading to the San Mateo toll bridge. During the month of December, 1935, the defendant, State of California, acting through its Department of Public Works, and under the authority of the Railroad Commission, awarded a contract for the building of a subway to eliminate a crossing at grade of Jackson Street and the tracks of the Western Pacific Railroad Company. Plaintiffs' property lies adjacent to the right of way of said railroad company on the north side thereof, and on the east side of Jackson Street. The entire parcel is opposite the approach to the subway. In front of plaintiffs' property Jackson Street is 66 feet wide. The subway, 24 feet in width, is located in the center of Jackson Street. It descends under the railroad tracks of said company to a depth of approximately 16½ feet, then ascends again to grade beyond said railroad tracks. On each side of the subway are "blind" lanes, 14.5 feet in width, which do not cross the tracks, but serve the owners of property adjacent thereto as means of ingress and egress to and from Jackson Street and their respective parcels of land.

The amended complaint alleges that the construction of the subway resulted in an impairment of plaintiffs' access to Jackson Street with a consequent depreciation in the market value of their property in the sum of $5,000. The case was tried by the court without a jury and from a judgment for plaintiffs, defendants prosecute this appeal.

Defendants maintain that their demurrer to the amended complaint should have been sustained on the ground that the trial court had no jurisdiction of these defendants nor of the subject of this action, and that the amended complaint did not state a cause of action. It is their position that plaintiffs' property has not been damaged, but, that even if it had been damaged, plaintiffs have no remedy because the state cannot

be sued without its express consent, and no such consent has been given.

Plaintiffs on the other hand contend that they have suffered a damage peculiar to their individual property in that their means of ingress and egress thereto has been impaired; that they have thus been deprived of their property without just compensation in violation of article I, sections 13 and 14 of the Constitution of California, and the 5th and 14th Amendments to the Constitution of the United States; and that this cause of action may be brought under said article I, section 14 of the Constitution of California.

Two major questions then are presented by this appeal: (1) Is section 14 of article I of the Constitution of California self-executing? and (2) have the plaintiffs herein sustained a compensable damage within the meaning of said constitutional provision?

As to the first question our answer must be in the affirmative.

Under our system of government all powers not granted by the Constitution of the United States to the federal government are reserved to the states, and the power of eminent domain is one of those reserved powers. It does not as a consequence, depend for its existence upon a specific grant in the constitution of a state. Instead, it is inherent in the sovereign state and founded upon the law of necessity. This power however, may be limited by constitutional provision, and it has been held that a constitutional provision for the payment of compensation is a limitation aimed by the Constitution at the power of eminent domain, limiting the exercise of that power by the public in favor of the individual owner of property. (*Commonwealth* v. *Plymouth Coal Co.*, 232 Pa. 141 [81 Atl. 148] (Aff. 232 U. S. 531 [34 S. Ct. 359, 58 L. Ed. 713]) ; 18 Am. Jur. 635.)

It is plain from a reading of the following portion thereof that section 14 of article I is such a limitation:

"Eminent Domain. Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner . . .; *provided*, that in an action in eminent domain brought by the state, or a county, or a municipal corporation, or a drainage, irrigation, levee, or reclamation district, the aforesaid state or political subdivision thereof or district may take immedi-

ate possession and use of any right of way required for a public use whether the fee thereof or an easement therefor be sought upon first commencing eminent domain proceedings according to law in a court of competent jurisdiction and thereupon giving such security in the way of money deposited as the court in which such proceedings are pending may direct, and in such amounts as the court may determine to be reasonably adequate to secure to the owner of the property sought to be taken immediate payment of just compensation for such taking and any damage incident thereto, including damages sustained by reason of an adjudication that there is no necessity for taking the property, as soon as the same can be ascertained according to law. . . .''

Since article I, section 14, therefore, is a restriction placed by the Constitution upon the State itself, and upon all of its agencies who derive from it their power of eminent domain, it cannot be said that the mere failure of the legislature to enact a statute allowing suit to be brought against the state entitles the state to disregard and violate that limitation. The logical inference is that said constitutional provision is intended to be self-enforcing.

In fact this court has already held section 14 of article I to be self-executing. (*Weber* v. *County of Santa Clara*, 59 Cal. 265; *Trahern* v. *San Joaquin County*, 59 Cal. 320.) Shortly after this constitutional enactment was adopted there arose a question as to whether section 14 of article I, or an act of the legislature which had previously been in effect, was controlling in the matter of condemning land for road purposes. Of said section 14, article I, this court in the case of *Weber* v. *County of Santa Clara, supra,* said:

''The constitutional provision is prohibitory in its nature and is self-executing; it is in direct conflict with the Act of March 18th, 1874, and by necessary operation repeals the same. The Constitution contemplates and provides for a proceeding *in Court* in all cases where private property is sought to be taken for public use, and it prohibits any other proceeding to that end.''

In the case of *Trahern* v. *San Joaquin County*, 59 Cal. 320, it was claimed that section 14 of article I was not self-executing. The appellant contended therein that the language—''as shall be prescribed by law''—in said section evidently contemplated some act of legislation on the subject, and until that

had taken place no damages could be assessed in pursuance of the constitutional provision. The court, however, decided to the contrary, on the authority of the Weber case, cited and quoted *supra*. This court is not alone in holding such a constitutional provision self-executing. As to those cases in which, like the case at bar, the injury is consequential—damaging rather than a taking, it is said in 18 Am. Jur. at page 1028:

"When there is no actual occupancy of the land . . . and the injury is not so severe as to constitute a taking in the constitutional sense, in the states which, by their Constitutions, require compensation when property is damaged, it is settled that the constitutional provision may be invoked in a proceeding other than an eminent domain proceeding. Under such a constitutional guaranty, the right to recover in an action in damages for consequential injury has been sustained in a number of cases. It is held that the constitutional provision is self-executing; that is, that even if a statute has not been enacted providing a remedy for damage from the construction of public works, the landowner is entitled to enforce his constitutional right to compensation in a common-law action." (*Logan County* v. *Adler*, 69 Colo. 290 [194 Pac. 621, 20 A. L. R. 512]; *Hickman* v. *Kansas City*, 120 Mo. 110 [25 S. W. 225, 41 Am. St. Rep. 684, 23 L. R. A. 658]; *Chester County* v. *Brower*, 117 Pac. 647 [12 Atl. 577, 2 Am. St. Rep. 713]; *Swift & Co.* v. *Newport News*, 105 Va. 108 [52 S. E. 821, 3 L. R. A. (N. S.) 404]; *Johnson* v. *Parkersburg*, 16 W. Va. 402 [37 Am. Rep. 779]; *Washington Water Power Co.* v. *Waters*, 186 Fed. 572; *Campbell* v. *Arkansas State Highway Commission*, 183 Ark. 780 [38 S. W. (2d) 753]; *Elgin* v. *Eaton*, 83 Ill. 535 [25 Am. Rep. 412]; *McGrew* v. *Granite Bituminous Pav. Co.*, 247 Mo. 549 [155 S. W. 411]; *State* v. *Taylor*, 224 Mo. 393 [123 S. W. 892]; *Householder* v. *Kansas City*, 83 Mo. 488; *Chick Springs Water Co.* v. *State Highway Dep't.*, 159 S. C. 481 [157 S. E. 842].)

The above-cited cases appear to be the leading authorities holding that a constitutional provision such as article I, section 14 of our Constitution is self-executing, but there are many other cases to this effect. Many of these authorities are collected in the case of *Chick Springs Water Co.* v. *State Highway Dep't., supra*.

In support of their contention that a sovereign state cannot be sued without its express consent, defendant cites *Perry*

v. *United States*, 294 U. S. 330 [55 S. Ct. 432, 79 L. Ed. 912, 95 A. L. R. 1335], in which it was determined that a holder of a federal government bond providing for payment in gold coin of standard weight and fineness could not sue the United States government after deflation of the dollar for the reason that Congress had not passed a statute authorizing such an action. This case, however, does not involve a constitutional provision such as article I, section 14, and is not in point in the view we have taken of this case—that the State of California by said self-executing provision of its Constitution has indicated its consent to be sued thereunder.

As further authority for their position that the right granted by constitutional article I, section 14, may not be enforced without specific legislation providing the method of enforcing it, defendant has cited *Spinney* v. *Griffith*, 98 Cal. 149 [32 Pac. 974], and *Bailey etc. Iron Co.* v. *Goldschmidt*, 33 Cal. App. 661 [166 Pac. 363]. In these cases actions were brought under section 15 of article XX of the Constitution, providing for various mechanics liens and stating that "the legislature shall provide, by law, for the speedy and efficient enforcement of such liens." The legislature failed to enact such legislation and the courts held that the constitutional provision conferred no right whatever, but that the whole remedy was contingent upon statutory enactment. These cases clearly are different from the one at bar for they are concerned with a constitutional section wherein it is specifically provided that the legislature should provide a method for the enforcement of the right granted. Section 14 of article I contains no such mandate. The court in the Spinney case, *supra*, correctly held that the statute was not self-executing, that the plaintiff therein did not comply with the terms of the legislative enactment applicable to the enforcement of a lien and was therefore not entitled to defend his lien. This decision was followed in the Bailey case, *supra*, which also held that the constitutional provision was inoperative except as supplemented by legislative action and that it was not intended to be self-executing.

Defendants' attempt to distinguish decisions of other states holding a constitutional provision similar to article I, section 14 to be self-executing on the ground that the constitutions of said states do not contain a provision similar to article XX, section 6, of our Constitution. The language of said section is as follows:

"Suits may be brought against the State in such manner and in such courts as shall be directed by law."

It is defendants' contention that the state, a sovereign body, cannot be sued without its express consent; that article XX, section 6 empowers the legislature to determine when and how suits may be brought against the state; that the legislature in Political Code, section 688, the only general statute on the subject, has seen fit to permit suits against the state only where the actions are on express contract or for negligence.

In passing it may be noted that article XX, section 6 does not on its face appear to be mandatory and direct that "*all* suits against the State *must* be brought in such manner. . . ." On the contrary the wording of said section, and the fact that it is located in the portion of the Constitution devoted to a discussion of "Miscellaneous subjects" tends rather to give the impression that said section was intended to be permissive, that is, to enable the legislature to specify what suits, other than those already provided for, might be brought against the state, and to prescribe the manner for so doing, and the courts having jurisdiction thereof.

██ Application of the rules of statutory interpretation to the two constitutional provisions under discussion does not disturb our conclusion as to the self-enforcing character of article I, section 14.

██ As is declared in the Code of Civil Procedure, section 1859, "In the construction of a statute the intention of the legislature . . . is to be pursued, if possible." Certainly the language of a statute should never be so construed as to nullify the will of the legislature. If section 6 of article XX is to be construed as requiring the enactment of a statute permitting suit to be brought to secure the right granted in section 14 of article I, the effect would be to permit the legislature, by its refusal or neglect to act, to nullify the intent of the framers of the Constitution. Such a result would be inconsonant with the rule that statutes must be given a reasonable interpretation, one which will carry out the intent of the legislators and render them valid and operative, rather than defeat them. In so doing, sections of the Constitution, as well as of the codes, will be harmonized where reasonably possible, in order that all may stand.

██ It is well settled, also, that a general provision is con-

trolled by one that is special, the latter being treated as an exception to the former. A specific provision relating to a particular subject will govern in respect to that subject, as against a general provision, although the latter, standing alone, would be broad enough to include the subject to which the more particular provision relates.

Further discussion of the interpretation of article I, section 14 is unnecessary for it cannot but be obvious that it must be regarded as self-enforcing in order to effectuate its evident objects and purposes.

After pointing out that Political Code section 688 permits suits against the state only on express contract or for negligence, defendants cite *Pacific G. & E. Co.* v. *State*, 214 Cal. 369 [6 Pac. (2d) 78], to the effect that section 688 of the Political Code as it now stands grants permission to sue the state only upon express contract; and further cite *United States* v. *Great Falls Mfg. Co.*, 112 U. S. 645 [5 S. Ct. 306, 28 L. Ed. 846, 848] and *Crescent Wharf etc. Co.* v. *City of Los Angeles*, 207 Cal. 430 [278 Pac. 1028] to the effect that a suit such as the one brought herein by the plaintiffs is an action on implied contract, which on the authority of *Crescent Wharf etc. Co.* v. *City of Los Angeles, supra,* may not be instituted under Political Code section 688.

Defendants continue, maintaining that the case last cited holds that rights granted by section 14 of article I of the Constitution are not superior to or in any different category from other property rights, and that a suit to recover damages for an infringement upon said rights, as a consequence, does not stand in any different light than any other class of suit, and may not be brought against the State of California without its express consent.

While we are familiar with the decisions mentioned above, we are not entirely in accord with the view that an action in the nature of inverse condemnation, such as the one with which we are herein concerned, is strictly a suit on implied contract. We are more inclined to hold that the constitutional provision itself grants a cause of action—statutory in nature. However, since it has been held that under a self-executing constitutional provision, an action will lie at common-law to recover compensation for private property taken or damaged for public use, we do not find it necessary to rule on that question in order to reach a decision in this case.

■ We do, however, wish to point out that this court in the Crescent Wharf case, *supra,* merely declared that the respect in which the right to compensation under constitutional article I, section 14 is not superior to or in a different category from other property rights is that such a right is not exempt from reasonable statutory regulations or enactments. In said case the regulation was a statute of limitations.

We are entirely in accord with that view. That a constitutional right may be subject to reasonable rules and regulations for the enforcement or protection thereof is elementary. A recent decision of this court in the case of *Chesney* v. *Byram,* 15 Cal. (2d) 460 [101 Pac. (2d) 1106], which cites the Crescent Wharf case, has held that a right granted by a constitutional provision may be subject to reasonable regulation and control by the state legislature and at the same time such provision may be self-executing.

■ It will be noted, however, that in neither of said cases did the court in any way imply that by state legislation or a lack thereof a constitutional right might be taken away or denied altogether, for it is likewise elementary that the legislature by statutory enactment may not abrogate or deny a right granted by the Constitution. *Potter* v. *Ames,* 43 Cal. 75; *Wilcox* v. *Engebretsen,* 160 Cal. 288 [116 Pac. 750]; *Sievers* v. *Root,* 10 Cal. App. 337 [101 Pac. 925]. And it follows as a logical conclusion that a right constitutionally granted cannot be taken away by the failure of the legislature to act.

As stated in the case of *State* v. *Fletcher,* 168 Okla. 538 [34 Pac. (2d) 595], the constitutional provisions in question were not enacted to protect in any way the sovereign state, but were specifically enacted to protect and preserve the individual rights of the subjects of the sovereign. Certainly, in the absence of provision in the section itself, the framers of the Constitution did not intend to grant a right which the legislature by its refusal or neglect to enact proper remedial machinery therefor might take away or deny.

■ Defendant has attempted to distinguish suits against agencies of the state from suits against the state itself, contending that though they admittedly may be maintained against the former, they cannot be brought against the latter without its express consent because of its sovereign nature.

This same argument was advanced in the case of *Chick Spring Water Co.* v. *State Highway Department, supra,* and,

we believe, ably answered in the opinion therein, as follows:

"No valid distinction can be drawn between cities, counties, and other political subdivisions . . . and the state highway. . . . All are agencies of the state, and all derive their immunity from the same source, the state, and upon the ground that, being agencies of the state, they are in effect the state itself. Counties, cities and other political subdivisions are held liable where they take property, not upon the ground that they are authorized by statute to be sued, but because of the constitutional provision requiring compensation to be made for such taking. This protection is afforded to the humblest citizen by the Constitutions of the state and the United States, and neither government can itself or by any statute or through any agency take property without paying compensation. Immunity from suit cannot avail in this instance, and, if no statute exists, liability still exists, because as to this provision the Constitutions are self-executing.

"To hold otherwise would be to say that the Constitution itself gives a right which the legislature may deny by failing or refusing to provide a remedy. Such a construction would indeed make the constitutional provision a hollow mockery instead of a safeguard for the rights of citizens.

"No court has ever applied the doctrine of immunity from suit to cases like the one at bar, nor can they, for to do so would absolutely annul the provision of article I, section 17, of the Constitution."

It is urged by the defendants that inasmuch as plaintiffs in this state can either enjoin or sue for damages in cases such as this (*Wilcox* v. *Engebretsen, supra; Rockridge Place Co.* v. *Oakland,* 61 Cal. App. 791 [216 Pac. 64]), plaintiffs are not entirely without a remedy.

It must be pointed out, however, that in many cases of consequential damage the remedy of injunction alone would be comparable to no remedy at all—for prior to the construction of the improvement which causes the injury it may not be apparent that damage will result, or if it is obvious that damage will result, it may be impossible to ascertain the extent thereof.

We proceed next to a consideration of the question whether or not plaintiffs have sustained a compensable damage within the meaning of article I, section 14 of the Constitution.

That the owner of property fronting upon a street or high-

way has as appurtenant thereto certain private easements in the street in front of or adjacent to the lot—distinguished from the public easements therein—which are a part and portion of his property and are the private property of the lot owner as fully as the lot itself, is not open to question.

The nature of this property right is described in *Brown* v. *Board of Supervisors*, 124 Cal. 274 at page 280 [57 Pac. 82], as: ''The property which an abutting owner has in the street in front of his land is the right of access and of light and air, and for an infringement of these rights he is entitled to compensation. This right is peculiar and individual to the abutting owner, differing from the right of passing to and fro upon the street, which he enjoys in common with the public, and any infringement thereof gives him a right of action. (Dillon on Municipal Corporations, sec. 712.) In *Eachus* v. *Los Angeles Cons. El. Ry. Co.*, 103 Cal. 614 [37 Pac. 750, 42 Am. St. Rep. 149], the right which the abutting owner has to the use of the street fronting upon his lot is defined to be an easement therein for the purposes of ingress and egress, which attaches to the lot, and in which he has a right of property as fully as that which he has in the lot itself, and that any act of the municipality by which that easement is destroyed or substantially impaired for the benefit of the public is a damage to the lot itself within the meaning of the constitutional provision, for which he is entitled to compensation.'' (See, also, *McCandless* v. *City of Los Angeles*, 214 Cal. 67 [4 Pac. (2d) 139]; *Eachus* v. *City of Los Angeles*, 130 Cal. 492 [62 Pac. 829]; *Geurkink* v. *City of Petaluma*, 112 Cal. 306 [44 Pac. 570]; *Wilcox* v. *Engebretsen, supra; Lane* v. *San Diego Elec. Ry. Co.*, 208 Cal. 29 [280 Pac. 109]; McQuillan, Municipal Corporations (2d ed.), vol. 4, pages 79, 85; Nichols, Eminent Domain (2d ed.), p. 503; Lewis, Eminent Domain (3d ed.), p. 177.)

The abutting owner's easement of access arises as a matter of law (Lewis, *supra*, p. 186), and its nature and extent have been set forth in the numerous decisions which have considered the question. Thus, it is established that the easement of access is as a matter of law peculiar to the individual owner, and an unreasonable interference with such an easement is an injury necessarily different from the injury suffered by the general public. (*Brown* v. *Board, supra*, p. 280.) It is an easement in the public highway upon which his land

fronts. (*Eachus* v. *Los Angeles, etc. Ry. Co., supra,* p. 617; *Cushing-Wetmore Co.* v. *Gray,* 152 Cal. 118, 122 [92 Pac. 70, 125 Am. St. Rep. 47] ; *Lane* v. *San Diego Elec. Ry. Co., supra,* p. 33; *McCandless* v. *City of Los Angeles, supra.*) The right extends to a use of the highway for purposes of ingress and egress to his property by such modes of conveyance and travel as are appropriate to the highway and in such manner as is customary or reasonable. (See, Lewis, Eminent Domain (3d ed.), p. 190.) The application of that rule to the case at bar means that the plaintiffs, as abutting owners on Jackson Street, possess as a matter of law not only the right to the use of the street in common with other members of the public, but also a private right or easement for the purposes of ingress and egress to and from their lot, which right may not be taken away or destroyed or substantially impaired or interfered with for public purposes without just compensation therefor.

Defendants contend that this court should hold as a matter of law that there was no interference with plaintiffs' easement of access or right of ingress and egress in this case, and also that the evidence does not sustain a finding of such interference. The former contention is based upon the theory that plaintiffs' easement merely entitles them to cross from their own property onto the street or highway on which it abuts. It is also claimed by defendants that whatever circuity of travel is caused thereafter is merely an inconvenience suffered after reaching the street or highway. These contentions cannot be sustained as the trial court found in the case at bar that plaintiffs' easement of access or right of ingress and egress was substantially impaired by the construction of the subway, and this finding is amply supported as will be shown by the evidence hereinafter set forth.

It is well settled that where there is evidence to support a finding that substantial and unreasonable interference with the landowner's easement of access or right of ingress and egress has been caused as the result of an obstruction in the street or highway on which his property abuts, an appellate court will not say as a matter of law that such finding is erroneous. (*O'Connor* v. *Southern Pacific R. R. Co.,* 122 Cal. 681 [55 Pac. 688] ; *Smith* v. *Southern Pacific R. R. Co.,* 146 Cal. 164 [79 Pac. 868, 106 Am. St. Rep. 17] ; *Fairchild* v. *Oakland & Bay Shore Ry. Co.,* 176 Cal. 629 [169 Pac. 388].)

The issues before the trial court in the case at bar were, whether plaintiffs' right of access to Jackson Street was substantially and unreasonably impaired by the construction of the subway, and if so, the amount of damage suffered as the result of such interference. These matters are for the trier of the facts and only where the evidence does not support a finding of substantial and unreasonable interference should the court decide the issue as a matter of law.

There is sufficient evidence to support the finding of unreasonable interference in the present case. One witness testified that the 14 foot lane for vehicular traffic and the 3.6 foot lane for pedestrians was not capable of supplying the necessary ingress and egress for this type of industrial property, and that because of the non-accessibility the property could not be put to some uses after the construction that it could have been put to before. Other witnesses spoke of the difficulty of gaining access to plaintiffs' property under the present circumstances, and the trial judge himself examined the premises. It was found that the lane provided was too narrow for two vehicles to pass each other if traversing thereon in opposite directions. In the face of this evidence and in view of the fact that the trial judge examined the property, it cannot be said that the finding of interference is unsupported by the evidence.

Defendants urge the doctrine of *damnum absque injuria* (damage without legal injury) but that doctrine means merely that a person may suffer damages and be without remedy because no legal right or right established by law and possessed by him, has been invaded, or the person causing the damage owes no duty known to the law to refrain from doing the act causing the damage. That rule has no application however where the person suffering the damage has a property right, the right of access in this case, and the duty is imposed by the Constitution on the person causing the damage to refrain from causing the same without payment of compensation. The right being fixed by law, the question of whether such right has been injured, and such duty violated, is one of fact.

Defendants attempt to distinguish the McCandless case, asserting that the McCandless property was on a main city thoroughfare, in a commercial zone, whereas plaintiffs' property is on the outskirts of a small town and was used for agricultural and residential purposes. Defendants further

compare the public improvements constructed, claiming that a legal distinction exists between the two cases, namely, that in the McCandless case the interference with the right of ingress and egress arose out of the fact that there was difficulty in getting to and from said property into the public street, whereas in the case at bar any inconvenience arises after the public street is reached. These purported distinctions are not convincing. The rights of an abutting owner to access to the street are the same whether his property is situated on a street in the business district of a large city or in the residential district of a small town. The extent of the damage for interference therewith might be different, but the right of access to the street would be the same. It was for interference with the right of access for which damages were awarded both in the McCandless case and the case at bar. The extent of the interference may have been different, but the interference with the right was the basis of the cause of action in both cases.

Defendants contend that even if plaintiffs were damaged, the damaging occurred as the result of the exercise of police power and is *damnum absque injuria*. This contention is wholly without merit as there is no basis for the application of the police power doctrine to the factual situation in this case.

Generally, it may be said that police power operates in the field of regulation, except possibly in some cases of emergency such as conflagration or flood when private property may be temporarily used or damaged or even destroyed to prevent loss of life or to protect the remaining property of an entire locality. There is obviously no element of regulation involved in the case at bar, and no suggestion of anything in the nature of an emergency. The damage to plaintiffs' property here involved was the result of a public improvement constructed by the state in the exercise of its power of eminent domain.

While it is true that the seeming absolute protection against the taking or damaging of private property for public use provided for in section 14 of article I of our Constitution may be qualified by the police power in the area in which such power operates, it should be obvious that the police power doctrine cannot be invoked in the taking or damaging of private property in the construction of a public improvement where

no emergency exists. To hold otherwise would in effect destroy the protection guaranteed by our Constitution against the taking or damaging of private property for a public use without compensation. (*Gray* v. *Reclamation Dist. No. 1500,* 174 Cal. 622 [163 Pac. 1024]; *Pennsylvania Coal Co.* v. *Mahon,* 260 U. S. 393 [43 S. Ct. 158, 67 L. Ed. 322].)

Relying very strongly upon the cases which have held that the closing of a street crossing by the railroad commission is *damnum absque injuria* as to nonabutting property owners, defendants maintain that plaintiffs certainly cannot complain because they must travel a narrow side lane to reach the main traveled portion of the street when they could not recover if the street were closed entirely.

Briefly, we may observe that recovery has been denied in those cases upon the ground that the injury is one suffered in common with the public, is not special or peculiar to the particular property involved, and the difference in damage is one of degree and not of kind depending upon the property owner's proximity to the closed crossing. Compensation has also been refused on the ground that the landowner's easement of access is not in fact impaired, that convenient and reasonable means of ingress and egress is afforded, although not the quickest and closest route to traveled thoroughfares. We have observed also that a growing number of decisions denying recovery for damages to nonabutting owners of property on closed streets are prompted by the economic factors involved. Since every property owner for a great distance therefrom is somewhat inconvenienced by the closing of a street, the question of where to stop awarding damages is not only difficult to ascertain, but the payment of damages in every case of this character would place a great burden upon the public whenever such closings are ordered.

The cases determining what does and what does not constitute a compensable damage when a street is ordered closed are in considerable confusion, and this decision will not be benefited by a lengthy consideration of the authorities cited by defendants on this proposition. Defendants contend that the case of *City of San Mateo* v. *Railroad Com.,* 9 Cal. (2d) 1 [68 Pac. (2d) 713], decides conclusively that the closing of a grade crossing is under the police power and any injury resulting therefrom is *damum absque injuria.* The court therein stated that in the absence of facts to the contrary it would assume that none of the plaintiffs' property directly

abutted on the area to be closed, and that the private property in question was contiguous to either county or state highways connected by public crossings. The court then held that the nature of abutting owner's right is "an easement in the street fronting upon his lot, for the purposes of ingress and egress," and concluded that no such right had been taken away in the case before it.

In *Arcadia Realty Co.* v. *City of St. Louis,* 326 Mo. 273 (1930) [30 S. W. (2d) 995], the court said:

"But if it be assumed that plaintiffs' properties will be stripped of potential uses and their value thereby lessened, and that the streets on which such properties are located will become *cul de sacs* as plaintiffs claim . . . all as a result of the street vacations in question, still plaintiffs will not by reason thereof suffer injury special or peculiar to them within the meaning of the rule long established in this state. In order for a property owner to sustain an injury special or peculiar to him on account of the vacation of a street, his property or some part of it must abut on the vacated portion, or else the vacation must deprive him of reasonable access to the general system of streets."

We are not here called upon to determine whether a property owner may recover damages in a case where his property is situated on a street created into a *cul de sac* as the result of the closing of the street on either side of his property without interfering with his right of access to the street on which his property abuts, as this is not such a case.

Our decision to regard the holding in the McCandless case, *supra,* as controlling with respect to the compensable nature of plaintiffs' damage herein, makes it unnecessary for us to consider this contention. The effect of the McCandless decision was to determine that a damage resulting from a factual situation similar to that with which we are here concerned, is compensable. This result was emphasized in the decision of the District Court of Appeal in the McCandless case, 10 Cal. App. (2d) 407 [52 Pac. (2d) 545], in which a hearing by this court was denied. Said case held that an instruction to the effect that any taking or damaging of the McCandless property was done under the police power and therefore not compensable, was properly refused. The earlier decision in the same case by this court was cited as being authoritative on this point.

In the instant case, the several property owners who claim

that their access is impaired by the construction of a subway in the street on which their property fronts, did suffer a damage to their property right, the right of access. That has been decided as a question of fact with ample evidence in support thereof.

The case of *Powell* v. *McKelvey*, 56 Idaho 291 [53 Pac. (2d) 626], is not in point for the reason that the Idaho Constitution does not grant compensation for a "damaging" as well as a "taking" of private property. Furthermore, the sidelanes in said case were not blind and were as a matter of fact held not to interfere with the lot owner's right of access. *Ralph et al.* v. *Hazen et al.*, 93 Fed. (2d) 68 [68 App. D. C. 55], is not decided under a constitutional provision such as article I, section 14 and, therefore, is likewise not applicable here.

We have examined the findings of the trial court and do not find that they contain inconsistencies or irreconcilable conflicts on any material issues. Defendants contend that the trial court erred in computing the amount of damage to plaintiffs' property on the basis of a 120 foot frontage on Jackson Street when said frontage was in fact only 118 feet as indicated on maps in evidence, which maps were agreed upon by the parties to be accurate. Reference to one of said maps reveals that the said frontage is recorded thereon to be 118 feet "plus or minus." In addition, defendants themselves, in their answer, stated that the frontage of plaintiffs' property measured "not more than 120 feet." Since there is some evidence to support said finding of the trial court, and since if such discrepancy did exist, it is so infinitesimal as to come within the rule of *de minimus,* we do not feel that the interference of this court is required.

Defendants also complain that the finding of the trial court as to damage,—namely, that the property was damaged to the extent of $35 per front foot, 125 feet deep, and that the remainder had been damaged in the sum of $200—was not supported by the evidence for the reason that all of the valuation testimony was based on the full depth of the property and not upon the basis of a subdivision at a depth of 125 feet.

There is little merit in this contention. That the trial judge is not bound by the opinion of the witnesses on market value is well settled. The province of such testimony is only to aid the court in arriving at a conclusion. (10 Cal. Jur. 972.) Furthermore, in the instant case the trial judge visited the

premises, and the information so obtained "is independent evidence that can be taken into consideration in determining the issue of the case." (*Gibson Properties Co.* v. *City of Oakland,* 12 Cal. (2d) 291, 297 [83 Pac. (2d) 942], (an eminent domain case), and cases cited.) In *Joint Highway Dist. No. 9* v. *Ocean Shore R. R. Company,* 128 Cal. App. 743 [18 Pac. (2d) 413], the court did not even view the premises, but it was held therein that "The trial court was not obliged to blindly accept the estimate of any witness on market value, and properly made its own determination of the ultimate fact, aided by the testimony of the various witnesses weighed in the light of all of the evidence before the court."

The facts are that plaintiffs' property is admittedly zoned as industrial property and testimony as to its value as such was received; the trial court viewed the premises and reached its own conclusion as to the value of 125 foot front strip of the property and the back portion thereof; and the total amount of the damage awarded was within the scope of the testimony of the valuation witnesses. (*Joint Highway Dist. No. 9* v. *Ocean Shore R. R. Company, supra,* p. 762; *City of Stockton* v. *Ellingwood,* 96 Cal. App. 708, 718 [275 Pac. 228].) In view of these facts we cannot say that the finding of the trial court was not supported by the evidence.

Defendants contend that prejudicial error was committed by the trial court in the admission of evidence, the denial of its motion to strike certain evidence, and that consideration was given by the trial court in fixing the amount of recovery to elements of damage which are not compensable. Specifically, it is complained that some of the valuation witnesses and the court in arriving at the amount of the damages suffered, considered as an element thereof the diversion of traffic from the street fronting plaintiffs' property; that is, that one of the elements of damage was that the improvement of the street caused a decrease in the flow of traffic thereon in front of plaintiffs' property. In this connection the record reveals the following. Plaintiffs' valuation witness Woodward, after testifying to the amount the property was damaged, testified as follows on cross-examination:

"Q. You state here that this property has been damaged in the amount you have testified to by reason of the decrease of the utility of the property. Now, just explain to me what the decrease of utility comes from? A. The decrease in utility

comes from taking the property off a 66 foot thoroughfare with four lines of traffic in it, as well as to sidewalks of 12 feet in width and putting it on a lane 14 feet wide for vehicular traffic, and 3.6 feet wide for pedestrians. *That is not a frontage that is capable of supporting an industry, any large industry, and not a width of street that is capable of supplying the necessary ingress and egress from such a property.* It is nothing more than an alleyway, *then again it takes away from the property the major portion of the public traffic going to and from Mt. Eden and Hayward.* Q. And taking away the traffic you think would contribute to the damage, do you? A. I certainly do. Q. How much do you think that part of it would contribute to your damage? A. I could not say in dollars and cents. Q. It would be considerable, wouldn't it? A. It would be, yes. Q. You think a 3 foot sidewalk would effect that too? A. I certainly do. It would be impossible for two people to walk abreast on a 3 foot sidewalk and let anybody pass without stepping out in the street, or lane, so to speak. Q. That contributes to the damage here? A. Surely. Q. The fact that traffic won't go by there contributes as well? A. That contributes, then the fact that these lanes that you have put in there are only one way lanes and two trucks could not pass. Q. You have not been able to decide in your own mind, Mr. Woodward, how much the taking away of traffic from in front of the property would damage this property? A. I simply considered all of the elements that entered into my mind and arrived at a lump sum of what I believed the damage to be. Mr. Reed. If your Honor please, I would like to strike out Mr. Woodward's testimony on the basis that he has considered elements which are not compensable. The cases are uniform in holding that no property owner has a right to have traffic pass his door and that is not a compensable item of damage, and Mr. Woodward's testimony is based upon that basis. The Court. It all goes to the weight of the testimony, I believe. (Argument.) The Court. That is in so far as traffic is concerned. Mr. Wentz. We will stipulate that may go out. The Court. He said that was a part, only one of many things, so the testimony stipulated to go out. Mr. Reed. Just a moment, your Honor, I don't want to stipulate that may go out now. I brought it out of the witness on cross-examination. The Court. Let the objection stand overruled. Go right ahead.'' (Emphasis added.) Woodward fixed the

damage to the property at $8,040. Plaintiffs' witness, Andrade, fixed the damage at $6,860. It does not appear from the record that he considered the diversion of traffic as an element of damage. The only part of his testimony approaching that subject was as follows:

"It was a question of *accessibility to the property*. By accessibility, I did not mean the ability of traffic on the highway to get in front of the property and park there and do business and get away again. I mean being deprived of one of the main highways, and by putting an alleyway, a blind alleyway at that." (Emphasis added.) It is obvious that when he referred to the deprivation "of one of the main highways" he was referring to the impairment of access, rather than the diversion of traffic, the right of access being over and on the highway as it existed before the improvement. Plaintiffs' witness Leidig placed the damages at $6,200; as far as appears from the record he did not take into consideration the diversion of traffic as an element of damage. The trial court viewed the property. The findings of the court with respect to the damages were as follows: "that since said change of grade and said construction of said alley and sidewalk, plaintiffs' easement and right of egress from said property and ingress to said property from Jackson Street have been substantially impaired and damaged in this, that plaintiffs no longer have free access to and from Jackson Street; that it is impossible for plaintiffs to have access to Jackson Street, except by proceeding north upon said narrow alley to the termination thereof and entering Jackson Street through traffic coming in the same direction. That said lane or alley is too narrow through said underpass for two vehicles to use if traversing thereon in opposite directions."

"That these plaintiffs' right of easement in and upon Jackson Street for egress from plaintiffs' property and ingress onto plaintiffs' property has been substantially impaired by the change of grade hereinabove referred to and by construction of said sidewalk and alley way hereinabove referred to. That plaintiffs' property has depreciated in value by reason thereof to the extent of $40.00 per front foot; that said real property described in paragraph IV hereof, since the changing of said grade hereinabove described, and since the construction of said sidewalk and alley hereinabove described, is not in excess of the value of $35.00 per front foot; for 120 feet frontage on Jackson Street and 125 feet deep, and the

remainder of plaintiffs' property has been damaged $200.00. That said property is not worth in excess of the value of forty-two hundred and no/100 ($42.00) dollars; that plaintiffs have been damaged, by said change of grade, the construction of the subway in the manner in which it was constructed, and by said construction of said alley and sidewalk, all of which deprive plaintiffs of any reasonable ingress to or egress from their said property, in the sum of five thousand dollars ($5000.00).''

The damage suffered by plaintiffs is, as we have seen, the interference with their right of access. The diversion of traffic is not a proper element to be considered in computing those damages inasmuch as a landowner has no property right in the continuation or maintenance of the flow of traffic past his property. Courts throughout the country are in substantial agreement as to the measure of damages in cases such as this, but there is a wide variance in the manner of establishing the amount of damage. Although it is well-nigh impossible to reconcile these conflicting decisions, it is believed that certain principles can be deduced therefrom which will serve to clarify the rules applicable in this state. Where private property is taken for a public use, it is universally agreed that the compensation required is to be measured by the market value of the property taken. (2 Lewis, Eminent Domain [3d ed.], sec. 685, p. 1175; 1 Nichols, Eminent Domain [2d ed.], sec. 217, p. 658; 3 Joyce, Damages, sec. 2184, p. 2238.) Where private property is taken for a public use and damage results to the remaining property of the landowner, compensation for such damage must be awarded which is measured by the diminution in value of that property which remains. (2 Lewis, *supra*, sec. 694, p. 1200; 2 Nichols, *supra*, sec. 236, p. 721; 3 Joyce, *supra*, sec. 2186, p. 2242, *et seq.*) If the state is required to make compensation for damage to private property resulting from a public use, where no property is actually taken, the measure of damages generally applied is also the diminution in the value of the property caused by the public use. (2 Nichols, *supra*, sec. 309, p. 822.) This is so under the various provisions requiring compensation for damage whether they are constitutional (2 Lewis, *supra*, sec. 751, p. 1337) or statutory in nature. (1 Lewis, *supra*, sec. 342, p. 618.)

Whenever it becomes necessary to estimate the amount of damage inflicted upon private property for the benefit of the public, whether or not there is a taking of property in con-

junction with the damage, there is a danger that the decline in market value may be attributable to causes other than those for which the landowner is entitled to recover. Where there is a taking of private property, however, the damage to the remainder is nearly always attributed to that taking. Thus, courts of other states have frequently said that the amount of damage, that is, the depreciation in value of the remainder, may be established by testimony relating to any factor, even though noncompensable in itself, which would make the property less desirable in the eyes of a prospective purchaser. (*Barnes* v. *Commonwealth*, 305 Mass. 339 [25 N. E. (2d) 737]; *Mississippi State Highway Com.* v. *Hillman*, 189 Miss. 850 [198 So. 565]; *Texas-Empire Pipe Line Co.* v. *Stewart*, 331 Mo. 525 [55 S. W. (2d) 283]; *Louisville etc. R. R. Co.* v. *Burnam*, 214 Ky. 736 [284 S. W. 391]; *Ohio Public Service Co.* v. *Dehring*, 34 Ohio, App. 532 [172 N. E. 448]; *Regina* v. *Monroe Co.*, 319 Pa. 257 [179 Atl. 36]; *Sterner* v. *Nixon*, 116 N. J. L. 418 [185 Atl. 48]; *Long* v. *Shirley*, 177 Va. 401 [14 S. E. (2d) 375]; *Idaho etc. Ry. Co.* v. *Coey*, 73 Wash. 291 [131 Pac. 810]; 2 Nichols, Eminent Domain [2d ed.], sec. 327, p. 896.) Such factors do not constitute separate elements of damage for the purpose of recovery but are admitted solely for the purpose of establishing the depreciation in market value. (*Miss. Highway Com.* v. *Hillman, supra.*) As will be seen later, this doctrine is not followed in its entirety by certain courts, including those in this state.

Where the necessity for assessing damage to private property arises apart from any taking of property by public authority, the problem of limiting the landowner's recovery to items for which he is legally entitled to recover damages becomes more acute. It is generally said everywhere that he has no right to recover for remote or speculative elements of damage. (3 Joyce, *supra*, sec. 2190, p. 2247; 2 Nichols, *supra*, sec. 239, p. 736.) The English courts which first considered the problem under statutes awarding compensation for private property which was "injuriously affected" in behalf of the public permitted recovery only where the damage was one which would have been actionable as between private individuals. (2 Nichols, *supra*, sec. 308, p. 821; 1 Lewis, *supra*, p. 662; 3 Sedgwick, Damages (9th ed.), sec. 1118, p. 2269.) In certain eastern states where the problem of awarding such damages has been met by special statute, as in Massachusetts (see 1 Lewis, *supra*, sec. 312, et seq.), a broader rule was followed which denied recovery only when the dam-

age suffered could be classified as general, rather than special, in nature and it was not required that the injury be one which would be actionable as between individuals. (2 Nichols, *supra,* secs. 309, 310, pp. 822, et seq.) In other states an even broader right to recover damages resulting from acts of the public has been created. Although the constitutional provision in its standard form requires that compensation be made for property taken or damaged for public use, the courts of these states have extended the principle discussed above which is used for estimating damage where a part of the property is taken for public use and have applied it to cases where property is merely damaged for a public use. In such states it is said that, whether or not a taking of property is involved, the damage to a landowner's property is to be estimated by considering every element of annoyance or disadvantage resulting from the public construction which would tend to depreciate the value of the property in the eyes of a prospective purchaser. (*City of Omaha* v. *Kramer,* 25 Neb. 489 [41 N. W. 295, 13 Am. St. Rep. 504]; *Chicago, R. I. & P. R. Co.* v. *O'Neill,* 58 Neb. 239 [78 N. W. 521]; *cf. State Highway Com.* v. *Smith,* 146 Okla. 243 [293 Pac. 1002]; *Root* v. *Butte, A. & P. Ry. Co.,* 20 Mont. 354 [51 Pac. 155]; 3 Sedgwick, *supra,* p. 2289.) These courts have reaffirmed this doctrine in recent cases (*Luchsinger* v. *Loup R. etc. Dist.* (Neb.), 299 N. W. 549; *State Highway Com.* v. *Smith, supra*) and have permitted a consideration of such elements as the diversion of traffic from the property of a landowner in estimating the damage caused by a public improvement. (*Omaha* v. *McGavock,* 47 Neb. 313 [66 N. W. 415]; *Gillespie* v. *City of South Omaha,* 79 Neb. 441 [112 N. W. 582]; *Root* v. *Butte, A. & P. Ry. Co., supra.*)

In states such as California, where the recovery of damages depends upon the infringement of some right which the owner of land possesses in connection with his property, decisions have clearly indicated that, although the measure of damages is generally the diminution in market value, the evidence relied upon to establish such diminution must be based upon the depreciation flowing from the actionable injury which is the basis for the right to recover damages. Thus, in *People* v. *Gianni,* 130 Cal. App. 584 [20 Pac. (2d) 87], a small portion of land was taken for public highway purposes. It was contended on behalf of the landowner that because a small portion of land had been taken and because he was entitled to recover for that injury, the damages to his remaining land

should be based upon the total depreciation in the value of his remaining property even though that depreciation was caused primarily by an admittedly noncompensable element of damage, that is, diversion of traffic. The court said, however, that while diminution in market value was ordinarily the test of damage to real property, the damages must be limited to those which accrue *by reason of* the legal injury for which compensation was due. In a similar case, it was held that evidence as to the damage caused by a diversion of traffic by reason of highway construction was properly stricken from the record because the diminution in value resulting therefrom was not caused by any injury for which the landowner was entitled to recover damages. (*City of Stockton* v. *Marengo,* 137 Cal. App. 760, 764 [31 Pac. (2d) 467].) It will be noted that this result was reached in California where a taking of property was involved.

A similar conclusion must also be reached where damage alone is involved. Many courts have indicated that the diminution of value in such cases cannot be based upon elements of damage for which the landowner is not entitled to recover. (*Greer* v. *City of Texarkana,* 201 Ark. 1041 [147 S. W. (2d) 1004] ; *City of Chicago* v. *Spoor,* 190 Ill. 340 [60 N. E. 540] ; *Camden Int. Ry. Co.* v. *Smiley,* 27 Ky. Law Rep. 134, 84 S. W. 523; *Harrison* v. *Louisiana Highway Com.,* 191 La. 839 [186 So. 354].) This is particularly true in so far as diversion of traffic is concerned, even in states where the applicable rules do not correspond to those in this state and in situations where a taking of property is also involved. (*Greer* v. *City of Texarkana, supra; State ex rel. Sullivan* v. *Carrow* [Ariz.], 114 Pac. (2d) 896; *Ralph* v. *Hazen,* 93 Fed. (2d) 68 [68 App. D. C. 55] ; *City of Chicago* v. *Spoor, supra; State* v. *Hoblitt,* 87 Mont. 403 [288 Pac. 181] ; *State Highway Com.* v. *Chatham,* 173 Miss. 427 [161 So. 674] ; *Heil* v. *Alleghany Co.,* 330 Pa. 449 [199 Atl. 341] ; *City of El Paso* v. *Sandfelder* [Tex. Civ. App.], 118 S. W. (2d) 950; *Nelson* v. *State Highway Board,* 110 Vt. 44 [1 Atl. (2d) 689, 118 A. L. R. 915].) While a few cases have permitted a consideration of the depreciation caused by diversion of traffic, they are contrary to the weight of authority. (See 118 A. L. R. 921, et seq.)

The precise question involved here was presented to the court in *City of Chicago* v. *Spoor, supra.* In that case the building of a viaduct impaired the adjoining landowners' right of access. In testifying as to damage, the witnesses

admitted upon cross-examination that one of the most promi-
nent elements of damage was the altered nature of the traffic
after the construction of the viaduct. The trial court refused
to strike such testimony and the Supreme Court of Illinois
commented (190 Ill. 340, 347):

"It appears . . . that the view of the court was that, while
a party could not sue and recover for loss of profits to a busi-
ness on account of a viaduct, yet, if there was an injury to
abutting property there could be a recovery for everything
that went to make up the market value of the lots, *whether it
be a diversion of traffic* or whatever it might be. This being
a suit where access to the property was affected, the court
seems to have held that everything resulting from the improve-
ment which affected unfavorably the utility of the property
for business purposes was an element of damage." And at
page 350:

"The evidence of damages resulting from diversion of
traffic or changing the method of transportation on the street
was not legitimate for any purpose, and opinions of witnesses
based on depreciation from those causes should have been
excluded." At page 352, the court pointed out:

"It could not be said that, if a party should sue for dam-
ages on account of a diversion of traffic, he could not recover,
because he had no legal right which had been infringed, but,
if he sued for damage by cutting off access to his property he
could include damages from diversion of traffic as to which he
had no legal right." This rule has been followed in later
cases. (*Illinois P. & L. Corp.* v. *Talbott*, 321 Ill. 538, 549 [152
N. E. 486]; *Illinois P. Co.* v. *Wieland*, 324 Ill. 411, 415 [155
N. E. 272]; 18 Am. Jur. 879; 22 A. L. R. 159, 163.) We think
that the rule laid down in *City of Chicago* v. *Spoor, supra,* is
the correct one. Damages resulting from an interference with
private rights of property must be estimated with reference
to the diminution in value caused by that legal injury. The
presence of a single compensable injury, such as the impair-
ment of an easement, should not be made the basis for a re-
covery of the total depreciation in value of a landowner's
property where it appears that much of the depreciation is
attributable to legally noncompensable factors. This conclu-
sion results inevitably from a consideration of previous de-
cisions in this state and the principles which are controlling
in those cases. (*People* v. *Gianni, supra; City of Stockton* v.
*Marengo, supra; Wolff* v. *City of Los Angeles*, 49 Cal. App.

400 [193 Pac. 862]; *cf. County Sanitation Dist. No. 2* v. *Averill,* 8 Cal. App. (2d) 556, 565 [47 Pac. (2d) 786]; *Coast Counties Gas & Elec. Co.* v. *Miller & Lux,* 118 Cal. App. 140, 144 [5 Pac. (2d) 34].)

Applying the above rules to the case at bar does not, however, necessitate a reversal of the judgment. In the first place it will be noted that defendants' motion was to strike *all* of Woodward's testimony. There was no effort to limit it to his estimate of the damages suffered. He testified concerning other matters which were properly presented in evidence. For illustration, he testified that he was familiar with plaintiffs' property, that the value of the improvements on the property was $1,200, that the property is best adapted to industrial use, that its use for agricultural purposes is not the best use to which it is adapted, that the property is improved with a residence, tank and barn, that the highway improvement interferes with the right of access, and that there is property being used for industrial purposes in the vicinity of plaintiffs' property. Defendants cannot predicate error on the denial of a general motion to strike all of Woodward's testimony, when only portions thereof were inadmissible. A motion to strike must be directed with precision to the matter sought to be stricken. (*Dietlin* v. *General American Life Ins. Co.,* 4 Cal. (2d) 336 [49 Pac. (2d) 590].) A motion to strike out inadmissible evidence may be properly denied where it is general and embraces evidence which is admissible as well as that which is inadmissible. (*Powley* v. *Swensen,* 146 Cal. 471 [80 Pac. 722]; *Brown* v. *Montgomery Ward & Co.,* 104 Cal. App. 679 [286 Pac. 474].)

In any event, it does not appear from the entire record that the error, if any, was prejudicial. It must be remembered that there is no indication from the findings of the trial court that it took into consideration the diversion of traffic as an element of damage. Plaintiffs had two valuation witnesses in addition to Woodward, and the amount of damages found to have been suffered was considerably less than that appearing from their testimony. The court viewed the premises and arrived at its own judgment as to the extent of the damages suffered. In *Joint Highway Dist. No. 9* v. *Ocean Shore R. R. Co., supra,* evidence of value was improperly admitted because elements were considered that should not have been, nevertheless the court held that the error was not prejudicial, stating at page 765:

"It may therefore be freely conceded that the above-mentioned evidence and other evidence in the record should have been stricken, but it does not necessarily follow that the action of the trial court in admitting such evidence and thereafter failing to strike the same constituted prejudicial error requiring a reversal. In *City of Stockton* v. *Ellingwood, supra,* at page 742, the court quotes from [*Conan* v. *Ely*] *City of Ely* v. *Conan,* 91 Minn. 127 [97 N. W. 737], as follows: 'Ordinarily the admission or exclusion of opinion evidence, where it is not of a determinative character, is not regarded as sufficient to justify a reversal.' This is more particularly true where, as in the present case, the cause was tried by the court sitting without a jury and it does not appear that the trial court's determination of market value was in any way influenced by the testimony erroneously admitted. While the objectionable testimony contained figures in excess of the highest estimates found in the competent testimony on market value, the trial court fixed the awards at figures far below the lowest estimates of market value found in any of the testimony, competent or incompetent, offered by respondents. It is quite apparent that the trial court made its own determination of the market value of the land, using the opinions on this subject merely as an aid for that purpose and giving to such opinions only the weight to which they appeared to be entitled. This was entirely proper and we find no prejudicial error in the admission of the incompetent testimony referred to or in the refusal to strike out said testimony." It was held in *Reclamation Dist. No. 730* v. *Inglin,* 31 Cal. App. 495 [160 Pac. 1098], that a denial of a motion to strike valuation evidence was not prejudicial error although based on improper considerations, inasmuch as the jury's verdict was not in excess of the amount fixed by that evidence. Injury will not be presumed from error. The appellant has the burden of showing wherein it was injured. This it has failed to do. Valid and admissible evidence amply supports the judgment, and we cannot say the result would have been different, if defendants' motion had been granted. The amount of the judgment, $5,000, indicates that the court did not base its decision on Woodward's testimony of damages amounting to $8,040. There is sufficient variance between the two figures to indicate that the judgment was based on the competent testimony of Andrade and Leidig, and the court's view of the premises and the other evidence in the record. The fact that the trial court

denied the motion to strike does not necessarily show that its judgment was based on Woodward's erroneous presumption of the compensable elements involved. If it did, practically every case involving the improper admission of evidence would be reversed because of prejudicial error.

Other contentions raised by both parties do not require further discussion for they have been examined and found to be without merit.

For the reasons and upon the authorities contained herein, the judgment of the trial court is affirmed.

Shenk, J., and Curtis, J., concurred.

HOUSER, J., Concurring.—I concur in the judgment of affirmance, but I do not agree with that portion of the majority opinion which holds that damage suffered as the result of diversion of travel is not compensable.

GIBSON, C. J., Dissenting.—I dissent. The judgment in this case awards damages based upon non-compensable elements of injury and it should therefore be reversed for a new trial.

The principles of law upon which the court is in agreement may be stated as follows:

1. Article I, section 14, of the California Constitution is self-executing, and a cause of action may be stated under it without the necessity of express legislative sanction therefor.

2. An action may be maintained under article I, section 14, by the owner of property abutting upon a public highway for any substantial impairment of his easement of access to and from the highway caused by a public improvement.

3. Where the evidence shows, as in the present case, that the construction of a public improvement in the highway, although not immediately adjacent to the property line, interferes substantially with the landowner's means of ingress and egress, he is entitled to damages therefor.

4. The damages recoverable in such an action are those which flow from the impairment of the landowner's easement of access, and the evidence concerning the damage should be confined to matters bearing upon such impairment.

5. In this action the trial court committed error in permitting witnesses to base their testimony upon non-compensable items of damage, such as the diversion of public traffic from

the highway upon which the property abutted. (The concurring opinion of Justice Houser indicates that he disagrees with this conclusion.)

The majority opinion, however, goes on to hold that the trial court's refusal to strike testimony based upon improper elements of damage was not error, or if it was error, was not prejudicial. I do not agree with this conclusion.

In California, and in certain other states, a liberal policy has been adopted in the admission of opinion evidence concerning damage to real property. In part, this policy has been justified on the ground that the basis for the opinion of the witness can be explored upon cross-examination. (*Razzo* v. *Varni,* 81 Cal. 289 [22 Pac. 848] ; 86 A. L. R. 1449, 1450, 1459, 1460; 20 Am. Jur. 1001.) As held by the majority opinion, the testimony of witnesses concerning damage to property in cases such as this must be confined to the diminution in value resulting from lawful elements of damage. (*City of Chicago* v. *Spoor,* 190 Ill. 340 [60 N. E. 540] ; *City of Stockton* v. *Marengo,* 137 Cal. App. 760 [31 Pac. (2d) 467].) Where cross-examination indicates that the opinion of a witness as to diminution in the value of property is based partially upon non-compensable items of damage which he is unable to segregate from the lawful elements of damage, a motion to strike his testimony should be granted. (*City of Chicago* v. *Spoor, supra; Hohmann* v. *Chicago,* 140 Ill. 226 [29 N. E. 671] ; *Illinois L. & P. Corp.* v. *Talbott,* 321 Ill. 538 [152 N. E. 486] ; *City of Kankakee* v. *Illinois Cent. R. Co.,* 263 Ill. 589 [105 N. E. 731] ; cf. *San Diego Land etc. Co.* v. *Neale,* 88 Cal. 50, 63 [25 Pac. 977, 11 L. R. A. 604] ; *City of Stockton* v. *Ellingwood,* 96 Cal. App. 708, 716 [275 Pac. 228].) Under these cases the opinion of such a witness should be stricken because if he is unable to segregate the proper from the improper elements involved in his estimate of damage, it is impossible for anyone to determine what part of his estimate is based upon proper elements. Since the opposing party is entitled to a proper estimate, the erroneous opinion should be stricken from the record to be replaced, if possible, with an estimate based upon lawful elements of damage. It is, of course, the general rule that a motion to strike should be directed specifically to the objectionable portion of a witness' testimony. But here the testimony was in the form of the witness' opinion which cross-examination disclosed to be based upon improper elements of damage. The witness was unable to state what

part of his estimate rested upon the non-compensable items which he acknowledged formed part of the basis for his opinion. Since the foundation of his testimony was in part erroneous and since that part of his opinion which was due to improper elements could not be ascertained, the erroneous estimate of damage was unquestionably the proper subject of a motion to strike. If the erroneous estimate is stricken, nothing of value remains in his testimony. The grounds for the motion were clearly stated and are supported by the rules of law announced in the majority opinion. The trial court erred therefore in denying the motion to strike the testimony of the witness Woodward.

The mere presence of error does not authorize a reversal of the judgment below unless it appears that a miscarriage of justice has resulted. (Constitution, art. VI, sec. 4½; *Etienne* v. *Kendall,* 202 Cal. 251, 257 [259 Pac. 752].) It has been held in an action tried without a jury that the admission of erroneous opinion testimony as to value does not require a reversal of the judgment where the court fixed its award below the estimates of damage given by the witnesses and where it does not appear that the trial judge was influenced by the opinion evidence erroneously admitted. (*Joint Highway Dist. No. 9* v. *Ocean Shore R. R. Co.,* 128 Cal. App. 743, 765 [18 Pac. (2d) 413].) In the present case, however, the record shows clearly that the trial judge did not realize that it would be improper for him to consider the testimony challenged by defendant's motion to strike. The motion was twice presented by defendant and denied by the trial court with the comment that the use of non-compensable items by the witness in reaching his estimate of the damage went only to the weight to be given his testimony. It is apparent, therefore, that the trial court did not apply the correct principles of law in assessing the damages which plaintiffs were entitled to recover. The majority opinion states there was other proper evidence which furnishes support for the award of damages made by the trial court, and that any error with regard to Woodward's testimony cannot be held prejudicial. It does not appear that the testimony of the plaintiffs' other two witnesses was challenged by a motion to strike upon the ground that they considered improper elements of damage in reaching their estimates. The record indicates, however, that these witnesses also used non-compensable factors as the basis for their opinions.

The witness Andrade in his testimony as to the inaccessi-

bility of the property, stated that he meant ''being deprived of one of the main highways.'' He also considered the fact that, in proceeding in a southerly direction after leaving the Rose premises, it is now necessary to go a block to the north in order to turn and go south. A similar situation results when a highway is divided by a center island to prevent traffic accidents, and it certainly cannot be said that an abutting landowner's easement of access has thereby been impaired. At most, it is a matter of inconvenience. The witness also took into consideration as an element of damage the difficulty in gaining access, not to the highway, but to the existing spur-track of the intersecting railroad which is located on private property across the highway from the Rose property. Plaintiffs' easement, however, is one of access to the highway itself and the damages must be limited to the impairment thereof. Similarly, the plaintiffs' third witness, Leidig, said that whatever value the property had for industrial purposes, upon which he based his estimate, resulted from the possibility of combining highway and railroad accessibility. The major damage caused by the subway construction, however, appears from his testimony to have resulted from the difficulty in gaining access to the railroad's existing spur track.

Considering the complete intermingling by all witnesses of the damages caused by non-compensable elements with those caused by the impairment of the plaintiffs' easement of access, and the indications that the trial judge had an erroneous view of what evidence was to be considered in awarding the damages, it is apparent that the judgment necessarily rests upon a misapplication of the law and awards substantial damages thereunder. This is reversible error under any theory.

The judgment should therefore be reversed for a new trial upon the issue of damages in accord with the principles which have been stated.

Edmonds, J., and Traynor, J., concurred.

Appellants' petition for a rehearing was denied April 2, 1942. Gibson, C. J., Edmonds, J., and Traynor, J., voted for a rehearing.